## EDWARD D. TALBERTH

*vs.*

## GUY GANNETT PUBLISHING COMPANY

Kennebec.   Opinion, November 4, 1953.

*Dubord & Dubord,* for Plaintiff.

*Goodspeed & Goodspeed,* for Defendant.

SITTING: MERRILL, C. J., FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J., dissenting, THAXTER, J., dissenting in concurrence with MURRAY, A. R. J.

MERRILL, C. J. On report. This was an action of assumpsit brought by the plaintiff to recover from the defendant so-called severance pay in the amount of $3,135.00. The plaintiff was an employee of the defendant and a member of the Portland Newspaper Guild, Local 128, with which the defendant had an operating agreement or contract. This contract was entered into by the Guild, as bargaining agent, in behalf of itself and certain employees of the defendant who were engaged in the publication of certain of the defendant's newspapers. The plaintiff was among the employees of the defendant in whose behalf said contract was entered into and was entitled to the benefit of the terms and provisions thereof.

It has been stipulated that if the plaintiff is entitled to recover, the amount of his recovery shall be $3,135.00. Nor is there any controversy relative to the fact that plaintiff's employment by the defendant terminated on May 27, 1952, that he had completed more than twenty years' service at that time and was a member of said newspaper guild at the time his employment was terminated.

Among the provisions of the guild contract were the following which are pertinent to the facts in this case:—

## "ARTICLE VII

### (Severance Pay)

1. Upon dismissal, an employe, upon his request, shall receive a written notice from the Publisher, or his agent, stating the cause for his dismissal.
2. Upon dismissal, other than for gross neglect of duty, or gross misconduct while on duty, not provoked by management, an employe shall receive a cash severance payment equal to his salary for one week, at the highest rate received during his employment, for each six months or major fraction thereof that he has been employed by the Publisher. In no event shall this exceed thirty (30) weeks.

3.   In the event of the death of an employee, the Publisher shall pay his beneficiary, designated by the employe in writing in advance or his executor or administrator, an amount equal to the amount of severance pay to which the employe would have been entitled upon dismissal.

4.   Upon completion of 20 years' service or because of illness or having reached the age of 65, an employee may terminate his employment and, upon written application to the Publisher, shall receive a cash lump sum based on length of service as computed under Section 2 of this article.   Payments under this section shall be in lieu of any other terminal benefits provided for elsewhere."

The plaintiff seeks to recover severance pay under the provisions of the foregoing contract.  The issues in this case are, (1) whether or not the plaintiff was dismissed for "gross misconduct while on duty, not provoked by management," and if so, whether or not he would be entitled to severance pay under the provisions of Section 2 of Article VII of the contract *supra;* or (2) whether or not the plaintiff himself "terminated his employment" within the meaning of Section 4 of said Article VII under such circumstances that he would be entitled to severance pay "as computed under Section 2" of Article VII.

By agreement of the parties the case was reported to this court for final determination upon the admissible evidence.

The plaintiff was *the staff political writer* for the Gannett newspapers, so-called, published by the defendant company. Just prior to the severance of his relations with the defendant company he became actively involved in a serious and disgraceful political scandal.  A recital of the details of this scandal and of the part played by the plaintiff therein would serve no useful purpose if set forth at length in this opinion and perpetuated in our reports.  Suffice it to say, they were of such a nature and character that if and when they became

known, the plaintiff's usefulness as a political writer was sure to come to an end, and his retention by the defendant as a political writer would reflect discredit upon itself and its publications.

On the eve of the certain disclosure of the facts with relation to the scandal and the plaintiff's participation therein before a legislative investigating committee, the plaintiff, by his counsel and in person, made known to the defendant the existence of the facts and that the same were to be immediately made public.

The plaintiff's involvement and active participation in this scandal constituted gross misconduct on his part while on duty, not provoked by the defendant company or the management thereof and afforded sufficient ground for his immediate dismissal within the meaning of Section 2 of Article VII *supra.*

The defendant claims that *it* dismissed the plaintiff on account of gross misconduct within the meaning of Section 2 of Article VII of the contract, *supra,* and that the plaintiff because of the provisions thereof is not entitled to severance pay.

The plaintiff, on the other hand, claims that *he* terminated his employment after the completion of twenty years' service within the meaning of Section 4 of said Article VII, *supra,* and is entitled to severance pay thereunder in the sum of $3,135.00.

The facts are undisputed and it is upon the inferences from undisputed facts that we are to decide whether or not the plaintiff was dismissed under Section 2 or terminated his employment within the meaning of Section 4.

The difference arises because after the facts became known to the defendant, and after the defendant's Vice President had notified the plaintiff that he was already

through, the plaintiff was allowed to write a resignation which was published in the defendant's newspapers.

Upon the undisputed evidence we conclude that the defendant dismissed the plaintiff for "gross misconduct while on duty, not provoked by management." The essential nature of the termination of the plaintiff's employment was not changed by the fact that the plaintiff wrote and the defendant received, after it had dismissed the plaintiff, a statement by him in the form of a resignation which it used in connection with its publication of the facts respecting the termination of the plaintiff's employment.

As we said in *Lord, Berry & Walker* v. *Mass. Ins. Co.*, 133 Me. 335 at 336:—

"A discussion of the details of the evidence upon which these conclusions are based might be of interest to the parties to the litigation but would be of no value to students of the decisions of this Court, and we deem it unnecessary to encumber our reports with such a discussion. Suffice it to say that the evidence submitted by defendant fully sustains its contentions,".

See also *Robinson* v. *Clark*, 76 Me. 493.

The testimony with respect to the dismissal was given not only in the presence of the plaintiff but also in that of his counsel. Both of them had been present when the representative of the defendant informed the plaintiff of his dismissal. They both heard the entire conversations respecting the same which were testified to by this official and the other representatives of the defendant who were present when the conversations took place. Their testimony stands undisputed and undenied upon the record. Neither the plaintiff nor his counsel took the witness stand, as witnesses, to deny, explain, or to attempt to modify the same in any particular.

In our opinion Article VII must be interpreted as a whole. We hold that Section 4 thereof, which refers to Section 2,

must be interpreted in connection therewith, and that the right to severance pay under Section 4 is subject to the same limitation as that contained in Section 2.

It is the intent of the contract that if the employee be dismissed for "gross misconduct while on duty, not provoked by management," he shall not receive the severance pay to which he would otherwise be entitled under either Section 2 or Section 4 of Article VII of the contract.

The right to severance pay, although enforcible, is but a contingent right which does not become absolute unless the terms of the contract making provision therefor are complied with. It is never due and payable until the termination of the contract of employment, and then only if the contract be terminated under such conditions that it is payable according to the terms thereof.

Nor is the employee at the mercy of management with respect to his right to severance pay. His *right* to such pay depends upon his own conduct and upon that alone. The right to severance pay is not lost by *mere dismissal for cause*, but only when the dismissal is *"for gross misconduct while on duty, not provoked by management."*

The plaintiff was guilty of "gross misconduct while on duty, not provoked by management," and was dismissed therefor. The defendant is entitled to judgment. In accordance with the stipulation the entry will be

*Remanded for entry of*
*Judgment for the defendant.*

DISSENTING OPINION.

MURRAY, A. R. J. — Dissenting. We agree with the majority opinion that the facts show that the plaintiff was discharged for gross misconduct as described in Section 2 of the contract. We also agree with this part of the opinion: "Nor is there any controversy relative to the fact that plaintiff's employment by the defendant terminated on May 27, 1952, that he had completed more than twenty years' service at that time and was a member of said Newspaper Guild at that time."

While the opinion states that we are to decide whether or not the plaintiff was dismissed under Section 2, or terminated his employment within the meaning of Section 4, we contend that the employment was terminated not by plaintiff but by the defendant, which dismissal by the defendant made it impossible for the plaintiff to terminate the employment by resigning.

We also agree with the statement in the opinion, "the right to severance pay, although enforceable, is but a contingent right which does not become absolute unless the terms of the contract making provision therefor are complied with." We do not agree with its further statement, "It is never due and payable until the termination of the contract of employment ***." We agree to this as to Section 2, but not as to Section 4. We say it is due under Section 2 upon dismissal, but it is *due* under Section 4 on completion of twenty years' service, it is *payable* on resignation. The majority opinion states that Article VII of the contract must be interpreted as a whole. With this, of course, we differ, but do say that the contract as a whole should be interpreted, including Section 2 and Section 4, to get the intention of the parties thereto.

Section 2 and Section 4, Article VII follow:

"2.  Upon dismissal, other than for gross neglect of duty, or gross misconduct while on duty, not provoked by management, an employe shall receive a cash severance payment equal to his salary for one week, at the highest rate received during his employment, for each six months or major fraction thereof that he has been employed by the publisher. In no event shall this exceed thirty (30) weeks.

4.  Upon completion of 20 years' service or because of illness or having reached the age of 65, an employe may terminate his employment and upon written application to the publisher, shall receive a cash lump sum based on length of service as computed under Section 2 of the article. Payments under this section shall be in lieu of any other terminal benefits provided for elsewhere."

The construction, according to the majority opinion, is that Section 2 is in effect from the time of the commencement of the employment until there is a dismissal or a resignation, the construction of the dissenting opinions is Section 2 is in effect until there has been a completion of twenty years' service. At the completion of twenty years' service Section 2 has expired, and the right to resign and the right to severance pay vests. We are strengthened in our belief that Section 2 expired by the statement in Section 4: "Payments under this section shall be in lieu of any other terminal benefits provided for elscwhere."

The contract discloses that it was made by the defendant and the Portland Newspaper Guild for itself and on behalf of all employes of the publisher. As between this plaintiff and this defendant, the defendant drew the contract.

What was the intention of the parties to this contract? "The first maxim of construction, and that upon which rests

all the rules, is this, namely, that, so far as the law will permit, the apparent intent of the contracting parties shall be regarded. Operation and intent are to be ascertained from the purpose of the parties; their meaning and understanding as shown by the language they use, applied to the subject matter." *Katz et al.* v. *New England Fuel Oil Co.*, 135 Me. 452. Intention should be gathered from the whole instrument. *Monk* v. *Morton*, 139 Me. 291.

"Retirement pay is defined as 'adjusted compensation,' presently earned *** payable in the future. The compensation is earned in the present, payable in the future. *** until the *time* arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that *time* retirement pay becomes a vested right of which the persons entitled thereto cannot be deprived; it has ripened into a full obligation." *Retirement Board of Allegheny County* v. *McGovern*, (Penn.), 174 Atl. 400, 404, (underscoring ours), citing *Lynch* v. *U. S.*, 292 U. S. 571, 54 S. Ct. 840.

In *Division of Labor Law Enforcement* v. *Ryan Aeronautical Co.*, 236 Pac. (2nd) 236 (Cal.), a case for the collection of vacation pay in which the plaintiff had not complied with a required one year service, the contention of the defendant was, the clause was a condition precedent to the right of recovery. The court held it was ambiguous and not necessarily a condition precedent. The clause was inserted to accomplish continuous and faithful service and to induce the employee to remain in the employment. That the objects have been substantially procured, the benefit inured to the employer. Equity and justice require a liberal construction. That courts are disinclined to construe the stipulations or the contract as a condition precedent, unless compelled by the words of the contract plainly expressed, and particular-

ly so when result would work a forfeiture. This case also decides that provision for vacation pay is not a gratuity or gift but a contract for additional wages.

"An employee fulfilling these conditions then has a vested interest in retirement pay which cannot be destroyed, weakened, or departed from by subsequent legislation. Neither dismissal from service or office, nor any involuntary removal, can affect this vested right to retirement pay. We endeavored to specifically hold in the McGovern case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, whether the employee chooses to retire immediately or to continue in active service. His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a complete vested right when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation." *McBride* v. *Retirement Board* (Penn.), 199 Atl. 130, 132.

We say there is no ambiguity, but if there is ambiguity, following is the law: "The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises, is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. It is presumed that he will not leave undeclared that which he would claim as his right under the agreement. *** 'He who speaks should speak plainly, or the other party may explain to his own advantage.' " *Monk* v. *Morton, supra.*

"The Restatement of Contract, Sec. 261 provides where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise ***

and Professor Williston in his work on contracts Section 665 says thereof: 'Such an interpretation protects both parties to the transaction and does not involve the consequences that a slight failure to perform wholly discharges all right under the contract.' " *Division of Labor Law Enforcement* v. *Ryan Aeronautical Co.,* 236 Pac. (2nd) (Cal.).

It must be borne in mind that this defendant, not the plaintiff, made this contract, and for that reason it should be construed strongly against the defendant. The construction which the majority opinion gives to the contract is strongly in favor of the defendant.

Unless Section 4 is construed a promise to pay on completion of twenty years' service, an employee could work more than twenty years, then the defendant might be adjudged a bankrupt before employee resigned, the bankruptcy is neither a dismissal nor a resignation. After the twenty years' service and before the resignation, the contract might not be renewed, employee could collect nothing because he had not resigned while the contract was in effect. The opinion states that severance pay is never due and payable until the termination of employment, and then only if the contract be terminated under such conditions that it is payable according to the terms thereof.

The majority opinion has not construed this contract, it has written a new one. It has made resigning a mountain and the completion of twenty years' service a mole hill. It has written the contract so strongly against the plaintiff that it has succeeded in bringing about a forfeiture of this man's twenty years' service, and given the remuneration for it, not to the State but to this defendant. We think judgment should be for the plaintiff.

DISSENTING OPINION.

THAXTER, J., Dissenting. The only issue which I originally thought was in this case was whether the plaintiff was properly dismissed by the Guy Gannett Publishing Company for cause. Judge Murray's dissenting opinion has convinced me that I was wrong. No such simple solution exists. The question is whether the plaintiff became entitled to severance pay provided in Article VII, Section 4, of his contract of employment in spite of the fact that he was dismissed for cause.

Upon written application to the publisher to terminate his employment, he became entitled to severance pay after he had completed twenty years of service. There is no other qualification. That right could not be taken from him, as was done here, even though he may have misbehaved after his right to severance pay accrued by his having worked for twenty years.

This is a contract which is binding on the employer as well as on the employee. The employee did not lose all his rights which had accrued under it because he may have misbehaved after such rights had accrued.

In interpreting these labor contracts it is essential that we construe them strictly as written, not as we may think they should have been written, and certainly not by interpolating words in them which are not there.

I concur in the dissenting opinion of Judge Murray.