No. 45,019

Perry Commodore, *Appellee,* v. Armour & Company, a Corporation, and Armour Employees Credit Union, a Corporation, *Appellants.*

(441 P. 2d 815)

Opinion filed June 8, 1968.

*Robert H. Foerschler,* of Kansas City, argued the cause, and *Willard L. Phillips, Patrick B. McAnany, Thomas M. Van Cleave, Jr., James J. Lysaught, John J. Jurcyk, Jr., Bill E. Fabian, Robert E. Fabian,* and *Robert D. Benham,* all of Kansas City, were with him on the briefs for appellant, Armour & Company.

*Donald F. Price,* of Kansas City, Missouri, argued the cause, and *Albert E. Grauberger,* of Kansas City, was with him on the briefs for appellant, Armour Employees Credit Union.

*Robert L. Boyce, Jr.,* of Kansas City, argued the cause, and *Howard Washburn,* of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an action by plaintiff-appellee, Perry Commodore, to recover that part of the separation pay due him from defendant-appellant, Armour & Company, which was paid to defendant-appellant, Armour Employees Credit Union, rather than to appellee. For convenience appellee will be referred to as plaintiff or Commodore, Armour & Company, as Armour, and Armour Employees Credit Union as the credit union.

The trial court rendered judgment for plaintiff in the amount of $2,348, the sum paid by Armour to credit union on the termination of plaintiff's employment with Armour.

Plaintiff was a long time employee of Armour in its Kansas City, Kansas, plant. He was a member of the United Packinghouse Food and Allied Workers Union and his employment was subject to the terms and conditions of a collective bargaining agreement between his labor union and Armour. Plaintiff's separation pay, a part of which is the subject of this action, was provided for in the agreement. The credit union is a corporation owned by the employees of Armour. It is a separate and distinct corporation from Armour and was formed to lend money to employees of Armour. The credit union was not a party to the contract between Armour and plaintiff's labor union.

On June 4, 1962, plaintiff borrowed the sum of $4,385.00 from the credit union and signed a note in that amount payable at $90 per month, with interest at one percent per month. Seven other persons signed the note as comakers. Included in the note, signed by plaintiff, was a power of attorney in which he authorized Armour to pay the credit union any balance remaining unpaid on the note out of any money in its possession, due plaintiff, in the event of his leaving the employment of Armour. At the same time plaintiff signed a payroll deduction card authorizing Armour to deduct from his wages $40 per week to be applied on the monthly $90 payments. Plaintiff arranged for the treasurer of the credit union to refund to him one week's payment of $40 at the end of each month, if he needed the refund, since his payroll deduction of $40 per week was in excess of the $90 monthly payments due on the note.

On June 2, 1964, Armour announced the closing of its main plant in Kansas City, Kansas, as of September 1, 1964, and plaintiff was informed that he would be permanently dropped from employment with Armour unless he elected to move to another city.

On August 14, 1964, plaintiff filed a petition in bankruptcy and was adjudicated a bankrupt on August 17, 1964. He listed debts totaling $4,061.14 and assets of $900 in his schedules. The credit union was listed as an unsecured creditor in the amount of $500 and as a holder of accommodation paper signed by plaintiff in the amount of $2,000. Plaintiff's separation pay, exceeding $5,000 at the time, was not listed as an asset.

On August 18, 1964, the credit union received notice of plaintiff's

petition in bankruptcy. Armour received no notice, however, on August 28 plaintiff told Armour's paymaster that he had taken bankruptcy and directed the paymaster to stop making the $40 a week payroll deduction, Armour's paymaster complied. On the same day, at plaintiff's request, the credit union returned the last $40 payment. The credit union claims that on this occasion plaintiff stated he would pay the balance of the note later. A notation "will pay later" appears on the credit union account sheet but O. E. Baker, treasurer of the credit union, stated the notation was not entered on the account sheet until October 1, 1964, when the account sheet in question was started and notations were brought forward.

Armour closed its large plant in Kansas City, Kansas, on August 30, 1964. Previously it had acquired the K. C. Dressed Beef Plant in Kansas City, Kansas, and commenced some killing and cutting operations, around Labor Day in 1964. On September 8 plaintiff reported to work at the Dressed Beef Plant and was put on a job, in which the duties were described as, knocking cattle, driving cattle and shackling them. He worked four hours then told his boss that he was sick and left the plant. He did not return until the latter part of September when he told Armour the work was too hard and that he was going to take his separation pay in a lump sum payment.

Plaintiff's separation pay amounted to $5,703.82, on October 4, 1964, when Armour paid $2,348 to the credit union, $793.08 to withholding taxes and the balance of $2,562.74 to plaintiff. The credit union applied the $2,348 to the unpaid balance of plaintiff's note of June 4, 1962, and this sum is the subject of the instant action.

The first meeting of the creditors in the bankruptcy proceedings was held on September 17, 1964. Neither the credit union nor Armour made an appearance. Plaintiff was discharged in bankruptcy on November 17, 1964.

On November 24, 1964, plaintiff filed the petition in this action alleging defendants had $2,348 in their possession due him as separation pay under the collective bargaining agreement and praying for judgment in that amount against both defendants. The credit union answered, asserting as an affirmative defense that the sum claimed represented the balance due on the promissory note and was paid to it by Armour as authorized by the power of attorney. Armour answered that it had paid the $2,348 to the credit union

for plaintiff's account at plaintiff's own written request made in the power of attorney.

After bankruptcy was interjected by pretrial interrogatories and requests for admissions, the credit union amended its answer, alleging the note was secured, not dischargeable in bankruptcy; that failure of plaintiff to disclose his separation pay as an asset was a fraud on creditors, and that the trustee in bankruptcy was the real party in interest.

The instant case was submitted to the trial court on plaintiff's motion for summary judgment on May 21, 1965. The motion was denied on the grounds that there were issues remaining as to material facts. Subsequently, a pretrial conference was held and the parties agreed as to the issues of law to be determined but failed to agree upon a stipulation of facts.

The trustee in bankruptcy filed his final report on April 2, 1965, stating he did not receive or pay any money on account of the bankruptcy estate. On November 3, 1965, the credit union filed in the bankruptcy court an application to revoke plaintiff's discharge on the grounds he fraudulently failed to list his separation pay as an asset in the bankruptcy estate. On motion of the credit union, proceedings in the instant case were stayed until disposition of credit union's application in the bankruptcy proceedings to revoke plaintiff's discharge. The referee in bankruptcy refused to revoke the discharge and the credit union filed a petition for a review of the referee's order in the United States District Court. (*In the Matter of Perry Commodore, Bankrupt,* 262 F. Supp. 30 [1966].) The referee's order was confirmed on June 1, 1966, on the ground that the separation pay was not vested in the bankrupt and, therefore, was not an asset of the bankruptcy estate at the date of the filing. Chief Judge Stanley reasoned that the separation pay was compensation for services performed but the bankrupt's right thereto was contingent on an event (termination of employment), which had not occurred and, therefore, it was not required to be listed as an asset of the bankruptcy estate.

On January 10, 1967, the United States Court of Appeals, Tenth Circuit, affirmed the District Court's judgment for the reasons stated in the District Court's decision.

Meanwhile, even though a stipulation of facts had not been finally agreed upon, the trial court on January 12, 1966, on admissions of facts and affidavits filed before it, made extensive findings of fact

and conclusions of law and ruled that judgment should be rendered for plaintiff and against defendants. The credit union objected to the ruling on the ground that it was premature and suggested further findings of fact and conclusions of law. Thereafter, the court's ruling was stayed and the matter was set down for trial to the court on June 27, 1966. Evidence was offered at the trial and unanswered interrogatories, which had been submitted to Armour, were directed to be answered within a reasonable time. The court took the matter under advisement and, on September 12, 1966, made findings of fact and conclusions of law and entered the judgment for plaintiff, from which this appeal is taken.

There is little dispute concerning the trial court's findings of fact and they need not be repeated in detail. The thrust of this appeal is directed to the conclusions of law.

The trial court concluded that neither the power of attorney in the promissory note nor the payroll deduction authorization, directed to the paymaster of Armour, constituted an assignment of plaintiff's separation pay, or created any lien or security interest therein, in favor of the credit union. The trial court further concluded the credit union's claim against plaintiff on his promissory note was discharged in the bankruptcy proceedings; therefore credit union had no legal right to the money involved in this litigation and Armour had no legal right to pay it to the credit union.

The basic question presented on appeal is whether the power of attorney worked an assignment of plaintiff's prospective separation allowance so as to create a lien therein that would survive plaintiff's intervening bankruptcy.

The power of attorney, incorporated as a part of the note form, reads:

"POWER OF ATTORNEY

"I hereby agree that in the event of my leaving the employment of Armour & Company, or in the event of my death, as the case may be, before the payment of this obligation in full, including interest, the Armour Employees Credit Union shall have the option of declaring this note, or any balance remaining unpaid, immediately due and payable and Armour & Company is hereby authorized and directed to pay said Credit Union out of any money in its possession due and payable to me, or my executor or administrator, as the case may be, whatever amount may remain unpaid on this obligation."

By the terms of the power, the authorization granted was prospective to become effective only on future occurrences. The credit union was given power to declare the note, or any unpaid balance,

immediately due and payable on the happening of either of two events, plaintiff's death or his leaving employment with Armour. On the happening of either, Armour was given power to pay the credit union out of any money in its possession due and payable to plaintiff in the case of his leaving Armour's employment or in the case of his death any money due his executor or administrator.

We shall next consider the nature of separation pay under the terms of the collective bargaining agreement.

The agreement provided for separation pay, based upon wage history and period of employment, for employees in good standing at the time of their termination or death. There is no dispute as to plaintiff's good standing at the time of termination of employment.

The manifest purpose of the agreement was twofold. First, to provide incentive for continuous employment by enhancing benefits at ten year stages on the one hand and on the other declaring forfeiture in case of an employee's voluntary resignation or discharge for cause. Second, to provide security for an employee on his retirement in good standing or benefits to his family on his death, protected by the provisions of a nonalienation of benefits clause. The employee was given an option to receive the pay in one lump sum, or in weekly installments, and in the event of death any unpaid balance to be paid to his beneficiary of the group insurance policy.

The nonalienation of benefits clause provided that no right or benefit under the separation allowance program shall be subject to alienation, sale, transfer, assignment, pledge, or any encumbrance of any kind. The clause further provided:

". . . If the employee or former employee shall attempt to or shall alienate, sell, transfer, assign, pledge, or otherwise encumber his right, benefits, or amounts payable under the separation allowance program, or any part thereof, or if by reason of his bankruptcy or other events happening at any time, such benefits would otherwise be received by anyone else or would not be enjoyed by him, the Company in its discretion may terminate his interest in any such right or benefit and hold or pay it to, or for benefit of, such person, his spouse, children, or other dependents, or any of them as the Company may determine."

The plaintiff contends that the purpose of the inalienability clause was to protect and preserve the separation allowance for the use and enjoyment of plaintiff, his family or dependents; that if plaintiff attempted to assign or encumber it or if bankruptcy would result in benefits being received by anyone else, the company would pay it to his family. Plaintiff argues that Armour had no right to

pay the credit union and in so doing violated the purpose of the nonalienation clause by attempting to honor an assignment void under the terms of the clause as to both nonassignability and the effect of plaintiff's bankruptcy. While there is some authority for plaintiff's position (4 Collier on Bankruptcy [14th Ed.] pp. 1165-1166), in view of our disposition of the issues, it is unnecessary to construe the inalienability clause with respect to the validity of the assignment or the effect of plaintiff's bankruptcy prior to termination of his employment.

The basic contention of both defendants is that the debt, represented by the promissory note, is secured by the lien and assignment created by the power of attorney and was not discharged by plaintiff's bankruptcy. They argue the power of attorney here was a power given as security, therefore, irrevocable and not dischargeable in bankruptcy. While their position in terms of an abstract proposition of law is well supported (Vol. 1 Restatement of the Law of Agency, § 138; 72 C. J. S., Powers, § 8, p. 406; 2 Williston on Contracts [3rd Ed.], § 280, pp. 302-304), we do not believe it aplicable to plaintiff's separation pay, the subject of the attempted encumbrance in this case.

We are cognizant that no particular form is necessary to effect a valid assignment in Kansas (*Hall v. Terra Cotta Co.*, 97 Kan. 103, 154 Pac. 210) and that assignments of accounts, sums due or to become due, including wages or any chose in action, except one arising in tort, are recognized and enforced. However, we are cited to no case in this jurisdiction, and our research reveals none, dealing with the precise question whether a lien created by an assignment of future wages is avoided and extinguished by a discharge of the assignor in bankruptcy as of the date of the adjudication. The considerable preexisting conflict among the various state courts as to this question (74 A. L. R., Anno., 904; 93 A. L. R., Anno., 202) was settled in the case of *Local Loan Co. v. Hunt*, 292 U. S. 234, 78 L. Ed. 1230, 54 S. Ct. 695, 93 A. L. R. 195, in which the court rejected the rule previously established by the Supreme Court of Illinois. In the *Local Loan Co.* case an excerpt from the case of *In re West*, 128 Fed. 205, is quoted with approval as follows:

" 'The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same

as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors.'" (pp. 242, 243.)

Justice Sutherland speaking for the court further reasoned:

". . . An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankrupt." (p. 243.)

Does plaintiff's separation pay, under the circumstances existing here, fall within the rule with respect to assignment of future wages laid down in *Local Loan Co. v. Hunt,* supra?

Plaintiff claims the issues, as to the nature of separation pay and whether the credit union is a secured creditor, were dealt with squarely and answered in the bankruptcy proceedings. Plaintiff states defendants presented the power of attorney and argued in their briefs that by reason thereof credit union was a secured creditor in proceedings before the referee and later on review by the federal district and circuit courts. Defendants contend the issue, whether credit union was a secured creditor, was never presented or resolved at any stage of the bankruptcy proceedings.

It is fundamental that a final judgment of a federal court on the merits of a cause of action will operate as res judicata in a state court (*Union Pac. Rld. Co. v. Missouri Pac. Rld. Co.,* 136 Kan. 166, 13 P. 2d 276; *Hyatt v. Challiss,* 59 Kan. 422, 53 Pac. 467.) A creditor is precluded from denying, in a subsequent action, facts previously adjudicated in a bankruptcy proceeding. (*Clapp & Son v. Knorr,* 106 Kan. 733, 189 Pac. 936.)

An examination of the decision in *In the Matter of Perry Commodore, Bankrupt,* supra, fails to reveal any specific holding as to the effect of the power of attorney in working an assignment of separation pay, thereby making credit union a secured creditor. However, the federal court, in deciding plaintiff was not guilty of fraud in failing to list separation pay as an asset, did make specific findings as to the nature of separation pay under the terms of the collective bargaining agreement. We quote from page 31 of the opinion:

". . . The event which had not occurred was the bankrupt's termination under such circumstances as to entitle him to the separation pay. If he had

been discharged for cause, or otherwise been ineligible, there would have been no pay forthcoming. A fund thus contingent upon future happenings is not required to be listed as an asset of the bankrupt estate.

"Petitioner contends that separation pay is not 'wages or compensation' so as to be subject to the above rule of law. However, it is apparent that the pay is compensation of a sort, at least to the extent that it is paid by the employer to the employee generally for services performed. Section 19.3 of the employment contract defines separation allowance in the following terms: 'Separation Pay *is earned* during periods of employment with the Company . . .' I believe that the pay in question is subject to the above rule of law."

The rule of law referred to is that stated in 4A Collier on Bankruptcy (14th Ed.) § 70.34, as follows:

". . . Where the right to compensation is contingent on an event that does not occur until after bankruptcy, moreover, the trustee has been denied any interest in earnings eventually received by the bankrupt notwithstanding the fact that they represented payment for services performed wholly or in part before bankruptcy. . . ." (pp. 448, 449.)

While there appears to be validity in plaintiff's argument that the federal court's ruling amounted to a determination that separation pay, under the agreement here, is compensation representing pay for services performed wholly or in part before bankruptcy and, therefore, is res judicata as to the issue raised in the action before us, since we agree with the reasoning of the federal court it is not necessary that we base our decision on that premise. Although, under the terms of the employment agreement, it was correlated with employment previous to plaintiff's bankruptcy, his separation pay was neither wholly earned nor payable until the termination of his employment under conditions meeting requirements of the agreement.

Severance or separation pay is generally considered wages when provided for by collective bargaining agreements. (*In re Elliott Wholesale Grocery Co.,* 98 F. Supp. 1017; 40 A. L. R. 2d, Anno., p. 1055; *In re Public Ledger,* 161 F. 2d 762 [3rd Cir. 1947]; *In re Publishing Co.,* 231 N. C. 395, 57 S. E. 2d 366, 14 A. L. R. 2d 842.)

Though the main issue involved is not in point, the nature of termination allowance or separation pay, under the provisions of a collective bargaining agreement, similar to that involved in the instant case, was considered in the case of *Southwestern Bell Telephone Co. v. Employment Security Board of Review,* 189 Kan. 600, 371 P. 2d 134, 93 A. L. R. 2d 1312. It is noted in the opinion that the parties had agreed that lump sum payments of termination allowances were wages as defined in G. S. 1961 Supp., 44-703 (*o*),

now K. S. A. 44-703 ( *o* ). It was stated that the termination allowances involved were correlated with a claimant's past performances, not with future conduct, but the right to an allowance was predicated on the termination of employment, "That is, the employer-employee relationship has to end before one can qualify for a termination allowance."

In our opinion separation pay, under the terms of the agreement before us, constitutes wages. Though correlated with his past employment, plaintiff could acquire no right thereto until his employment was terminated under conditions in conformance with the other requirements of the agreement. Plaintiff's right to separation pay, when he signed the note and power of attorney, was at best contingent and never due and payable until termination of his employment and then only if termination be under such conditions that it became payable according to the terms of the agreement. ( *Talberth v. Guy Gannett Publishing Co.*, [1953] 149 Me. 286, 100 A. 2d 726, 40 A. L. R. 2d 1036.)

Under the terms of the agreement in question, plaintiff's continuing, in a satisfactory manner, his services in Armour's employment was an important part of the consideration for separation pay. He was paid weekly wages for his ordinary services. Separation pay constituted additional wages for continuing in employment until termination under conditions in compliance with the requirements of the agreement. It was not collectible nor was it fully earned until plaintiff met the required conditions, which occurred after adjudication. Entitlement to separation pay required substantial services by way of continued employment and termination thereof under the required conditions on the part of plaintiff subsequent to his adjudication in bankruptcy.

A factual chronology, similar to that in the instant case, is found in *Tennessee Valley Authority v. Kinzer*, 142 F. 2d 833 (6th Cir. 1944), where an employee gave notice of termination of employment on July 15, 1941, to become effective on August 28, 1941. On August 7, 1941, he was adjudicated a bankrupt. His retirement pay was held not to be an asset of the bankrupt estate. The court stating in the opinion:

"At the time of bankruptcy, the employee in this case had no interest in his contributions, which he could enforce or transfer, or which his creditors could reach. This is the criterion for determining whether such contributions passed to his trustee in bankruptcy. In re Baxter, supra. The contributions did not pass to the bankrupt estate." (p. 838.)

The same retirement fund was examined in *Hill v. Schaefer*, 221 F. 2d 914 (5th Cir. 1955) where the court held retirement pay to be an asset of the employee's bankrupt estate, since he had resigned and applied for retirement pay two days before he filed his petition in bankruptcy.

Under the terms of the collective bargaining agreement in question, plaintiff's separation pay cannot be considered wholly earned with respect to the dates of assignment to the credit union and plaintiff's adjudication. Plaintiff's discharge in bankruptcy operated to discharge his obligation to credit union as of the date of adjudication so that the debt was discharged before plaintiff fully earned or became entitled to the wages in the form of separation pay intended as security. Such being the case, the trial court's ruling, that credit union had no legal right to the money involved herein and Armour had no legal right to pay it to the credit union, must be affirmed.

Two further matters require our brief attention. Credit union claims plaintiff made a new promise to pay the note later when he requested a refund on August 28, 1964. Plaintiff denies that he did. The trial court refused to make such finding and since, as we have noted, the evidence on the point is in conflict its refusal must stand. A new promise to pay a discharged debt must be an express one and refer to a specific debt, it is not implied by part payment or other circumstances. (*Robinson v. Jacobia*, 115 Kan. 36, 221 Pac. 1113; *Needham v. Matthewson*, 81 Kan. 340, 105 Pac. 436.)

Credit union complains the note was not specifically listed in plaintiff's bankruptcy schedules. Credit union admits notice of the proceedings and that it was listed as an unsecured creditor in the amount of $500 and as a holder of accommodation paper in the amount of $2,000. Although a liability is not specifically scheduled by a bankrupt, it is discharged in bankruptcy if the creditor concerned has notice or actual knowledge of the proceedings. (*Zimmerman v. Ketchum*, 66 Kan. 98, 71 Pac. 264.)

The judgment is affirmed.

FONTRON, J., concurring: I am compelled to concur in the affirmance of this judgment, although I do so with great reluctance because of the bald scheme which plaintiff devised to mulct his own credit union and the fellow employees who accommodated him by going on his note. I base my concurrence, however, on the ground that plaintiff is barred under the doctrine of *res judicata*, not, as

held by the court, that separation pay which is payable on a future contingency constitutes future wages.

As I see the situation existing at the time Commodore chose to take bankruptcy, separation pay which Commodore might collect in the future, was not the equivalent of wages which Commodore might earn in the future. Neither of the two federal cases cited in the majority opinion, *Local Loan Co. v. Hunt*, 292 U. S. 234, 78 L. Ed. 1230, 54 S. Ct. 695, 93 A. L. R. 195, and *In re West*, 128 Fed. 205, sustains the view adopted by my colleagues that an assignment of separation pay is tantamount to an assignment of future wages.

In each of those cases the assignment which was the subject of the action, related to wages to be earned in the future, not to accumulated separation pay. Furthermore, the wages sought to be taken or attached in those two actions were earned entirely after the assignors had been adjudicated bankrupts.

Frankly, I believe it tortures the English language far too much to equate separation pay, entitlement to which is contingent upon the happening of a future event, with wages which are to be earned in the future. A scarcity of time precludes discussion in greater depth.