(595 P.2d 346)

No. 49,855

Super Chief Credit Union, *Appellant,* v. Ross McCoy, *Appellee.*

Opinion filed December 29, 1978.

*Thomas A. Valentine,* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, for appellant.

No brief was filed by appellee.

Before Foth, C.J., Abbott and Meyer, JJ.

Meyer, J.: This is an appeal from a decision denying plaintiff-creditor (appellant) judgment on one of two alleged debts.

Appellant is a credit union which advanced sums of money to appellee under an open end agreement prior to March 27, 1974. Appellant secured the debts by taking appellee's 1968 Plymouth automobile and a mobile home as security.

On March 27, 1974, appellee filed a petition in bankruptcy and on April 10, 1974, appellant filed proof of secured claim in bankruptcy. On May 15, 1974, the mobile home which partially secured the debt was destroyed; appellant sold the remains, received $300 and applied it toward appellee's indebtedness.

On June 14, 1974, appellee signed a document entitled "Renewal of Debt Listed in Bankruptcy," wherein he promised to pay each account owed to appellant pursuant to terms contained in separate disclosure statements which appellee also signed. On August 7, 1974, appellee was discharged in bankruptcy. Appellee generally failed to make payments to appellant thereafter, al-

though there is some indication that amounts were applied to the accounts by way of a payroll deduction from appellee's employer.

On May 16, 1975, appellant mailed Notices of Right to Cure Default to appellee, stating $747 due on the account secured by the automobile and $795.13 due on the account secured by the mobile home. Thereafter, appellant accelerated the entire indebtedness and filed this action on November 9, 1976, praying for judgment of $2,873.64 plus interest at the contract rate from November 9, 1976.

Appellee answered and generally defended on the basis that there was no consideration for reaffirmation of his debts and that since the alleged reaffirmation occurred prior to discharge in bankruptcy, the debts, even assuming a valid reaffirmation, were likewise discharged in the proceedings.

The district court found that the appellant "had full knowledge that the mobile home had been disposed of and that there was no security and that said debt was disposed of by bankruptcy." The court further found that there was no consideration in regard to the account secured by the mobile home and rendered judgment for appellant with respect to the debt secured by the automobile in the amount of $747 plus interest at the contract rate from May 31, 1975.

Appellant contends the court erred in refusing to grant judgment on both debts and focuses primarily on whether there was consideration to support the new promise reviving the debts. Additionally, appellant asserts the proper amount of judgment is $2,873.64 plus interest at the contract rate from November 9, 1976. We agree on both points.

Although discharge in bankruptcy constitutes prima facie proof of discharge of a listed claim under a security instrument (*Wichita City Teachers Credit Union v. Rider,* 203 Kan. 552, 557, 456 P.2d 42 [1969]), it is well established that a debt discharged in bankruptcy may be revived by a new promise to pay the debt. *Commodore v. Armour & Co.,* 201 Kan. 412, 422, 441 P.2d 815 (1968). There must be an express promise to pay the specific debt (*Robinson v. Jacobia,* 115 Kan. 36, 39, 221 Pac. 1113 [1924]), although any statement clearly admitting the debt to be due and showing a promise to pay is sufficient to renew the obligation. *Hart v. Gooding,* 122 Kan. 62, 65, 250 Pac. 1069 (1926).

Since a discharge in bankruptcy does not extinguish the

debtor's moral obligation to pay the debt, such moral considera-
tion will constitute sufficient consideration for the new promise.
*Needham v. Matthewson,* 81 Kan. 340, 343, 105 Pac. 436 (1909).
Although the New Jersey courts have held otherwise (*Black v.
Yanowsky,* 8 N. J. Misc. 221, 149 A. 345 [1930]), the overwhelm-
ing majority of jurisdictions hold that a promise made after the
filing of a bankruptcy petition but prior to discharge will be
effective to revive a debt listed in bankruptcy. See cases collected
at 8B C.J.S., Bankruptcy § 583(3); 9 Am. Jur. 2d, Bankruptcy
§ 824; Annot., 40 A.L.R. 1443; Annot., 83 A.L.R. 1292. We agree
with what is stated in the leading case of *Zavelo v. Reeves,* 227
U.S. 625, 629-30, 57 L.Ed. 676, 33 S.Ct. 365 (1913):

> "It is settled, however, that a discharge, while releasing the bankrupt from legal
> liability to pay a debt that was provable in the bankruptcy, leaves him under a
> moral obligation that is sufficient to support a new promise to pay the debt. And in
> reason, as well as by the greater weight of authority, the date of the new promise is
> immaterial. The theory is that the discharge destroys the remedy but not the
> indebtedness; that, generally speaking, it relates to the inception of the proceed-
> ings, and the transfer of the bankrupt's estate for the benefit of creditors takes
> effect as of the same time; that the bankrupt becomes a free man from the time to
> which the discharge relates, and is as competent to bind himself by a promise to
> pay an antecedent obligation, which otherwise would not be actionable because
> of the discharge, as he is to enter into any new engagement. And so, under other
> bankrupt acts, it has been commonly held that a promise to pay a provable debt,
> notwithstanding the discharge, is as effectual when made after the filing of the
> petition and before the discharge as if made after the discharge. [Citations
> omitted.]"

In the present case, appellant advanced sums of money to
appellee prior to the filing of the bankruptcy petition. Pursuant to
the loan arrangement, appellee was under a legal obligation to
pay the loan back with interest. At the time of the alleged
reaffirmation of debts, appellee was at least under a moral obli-
gation to pay the debts; and as indicated above, such moral
obligation was sufficient consideration for his new promise re-
viving the debts. Additionally, the fact that the new promise was
made after the bankruptcy petition was filed but prior to dis-
charge does not invalidate appellee's revival of the debts.

The district court erroneously placed emphasis on the fact that
the mobile home securing one of the accounts was destroyed
prior to the alleged reaffirmation. Such impairment of collateral
does not affect the debtor's moral obligation to pay a former debt
and is irrelevant to the issue of whether appellee executed a new

promise reviving the debt. The court seems to mistakenly equate "security" with "consideration" and makes no finding that the revival of the debts was the result of coercion or inducement.

We conclude that appellee was under a moral obligation to pay the debts at the time he executed the renewal; that the moral obligation constituted sufficient consideration to support the new promise; and that both debts were revived by the new promise notwithstanding appellee's discharge in bankruptcy.

The court's judgment in appellant's favor for $747.00 plus interest from May 31, 1975, is obviously based on the amount contained in the default notices appellant sent to appellee. An examination of the notices sent indicates that the amounts shown represent the sums currently due and owing, not the amounts of total indebtedness.

Under K.S.A. 16a-5-110(1), creditors may send notice of consumer's right to cure when default occurs. Creditors are allowed to accelerate the unpaid balance twenty days after notice of right to cure has been given (K.S.A. 16a-5-111).

Appellant sent appellee notice of right to cure in May, 1975, and did not accelerate the indebtedness until August, 1977, when appellant filed this action. The record indicates that appellee's last payment was made on November 9, 1976, and that the $300.00 received from sale of the mobile home was previously applied to the account. The record indicates that the total indebtedness as of November 9, 1976, was $2,873.64. We conclude that appellant is entitled to judgment based on this amount.

Judgment is entered for appellant in the amount of $2,873.64 plus interest at the contract rate from November 9, 1976.

Reversed.