David **FITZGERALD**, Plaintiff,

v.

**CITY OF OTTAWA, KANSAS**, Defendant.

No. 96–4221–KHV.

United States District Court,
D. Kansas.

Aug. 18, 1997.

Todd N. Thompson, Michael David Witt, Law Offices of Todd N. Thompson, Lawrence, KS, for David Fitzgerald.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, Robert L. Bezek, Jr., Bezek, Lowry & Hendrix, Ottawa, KS, for City of Ottawa, Kan.

*Memorandum and Order*

VRATIL, District Judge.

Plaintiff David Fitzgerald filed this action against his former employer, the City of Ottawa, Kansas (the "City"), claiming that defendant breached their Separation Agreement by failing to pay plaintiff amounts agreed under the contract. Plaintiff also claims that defendant wrongfully denied him access to an ICMA pension account which he had accumulated during his employment. Plaintiff claims $55,863.26 in total damages, $30,396.70 of which he attributes to defendant's conversion of the ICMA proceeds and $10,622.56 of which he attributes to a penalty for non-payment of wages under K.S.A. § 44–315.

This matter comes before the Court on *Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment* (Doc. # 39) filed June 2, 1997. In that motion, defendant requests that the case be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) or that the Court grant summary judgment for defendant under Fed.R.Civ.P. 56. Defendant's principal argument is that the Court lacks subject matter jurisdiction because plaintiff has artificially inflated his damage claim in order to obtain federal court jurisdiction. Specifically, defendant argues that payments due under the parties' Severance Agreement do not constitute "wages" for purposes of K.S.A. § 44–315 and that plaintiff lacks standing to claim damages for conversion of the ICMA account because the Franklin County District Court set aside the proceeds of that account to plaintiff's ex-wife.

By its *Order* (Doc. # 45) filed July 26, 1997, the Court sustained as unopposed defendant's motion to dismiss for lack of subject matter jurisdiction. After consulting with the parties, however, the Court ascertained that plaintiff's failure to oppose defendant's motion was excusable. The Court therefore vacated and set aside its July 26 order and ordered plaintiff to show cause why his complaint should not be dismissed for lack of subject matter jurisdiction. *See Order to Show Cause* (Doc. # 49) filed August 1, 1997. Plaintiff has now responded and the Court thus revisits the issues raised by *Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment* (Doc. # 39) filed June 2, 1997.

## STANDARD OF REVIEW

Defendant first seeks dismissal of plaintiff's complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. I.N.S.,* 23 F.3d 1576, 1580 (10th Cir.1994). A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 280 (D.Kan.1995), citing *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974); Fed.R.Civ.P. 12(h)(3). The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *Basso,* 495 F.2d at 909. When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball,* 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

Challenges to jurisdiction under Fed. R.Civ.P. 12(b)(1) generally take two forms:

facial attacks on the sufficiency of jurisdictional allegations or factual attacks on the accuracy of those allegations. *Holt v. United States,* 46 F.3d 1000, 1002–3 (10th Cir.1995). Defendant's motion falls within the latter category because both parties have relied on evidence outside the complaint. The Tenth Circuit has set forth the following standard in such event:

> [A] party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1003 (citations omitted). In this case, the Court need not look far beyond the allegations of the complaint and the Severance Agreement itself. As the Court explains more fully below, even taking plaintiff's allegations as true, plaintiff has failed to adequately allege facts which support federal court jurisdiction—specifically, he has failed to meet the minimum amount in controversy requirement of 28 U.S.C. § 1332.[1]

### FACTS

Plaintiff resides in Denver, Colorado. Defendant is a municipality incorporated in the State of Kansas. Plaintiff worked as a police officer for the City for 13 years. On April 5, 1995, the parties entered into a Separation Agreement and Release (the "Agreement"). Plaintiff had counsel at the time, and his attorney recommended that he sign the Agreement. Plaintiff understood from the Agreement that he was no longer going to work for the City as of April 5, 1995, and he in fact has not performed any work for the City since that time.

In the Agreement, the parties agreed, among other things, that the City would provide severance pay over several months in exchange for plaintiff's resignation and release of all claims against the City. The Agreement contained the following provisions:

> 2. The CITY shall continue to pay EMPLOYEE compensation that is equal to his full salary for a total of six months following the date of this SEPARATION AGREEMENT AND RELEASE, and shall continue his health insurance through such period.
>
> 3. The CITY shall, in addition, pay EMPLOYEE a sum equal to EMPLOYEE'S accumulated and unused sick, vacation and personal leave as of the date of this SEPARATION AGREEMENT AND RELEASE.

Plaintiff contends that the payments are due because of the Agreement and not because of any work that he performed in the six months following his resignation. Indeed, the City would not have paid plaintiff for unused sick leave and vacation pay if he had continued to work for the City.

The Agreement also contained a confidentiality clause which required plaintiff not to disclose any information about the agreement to any current or former city employee. That clause stated:

> 8. EMPLOYEE and CITY agree that the terms and conditions of this SEPARATION AGREEMENT AND RELEASE shall remain confidential as between the parties and they shall not disclose them to any other person, except as required by law or pursuant to court order. The parties acknowledge that EMPLOYEE had discussed the terms of this agreement before the signatures hereunder were entered, and before confidentiality became required as a part of the AGREEMENT. EMPLOYEE specifically agrees hereafter that he shall not disclose information regarding this SEPARATION AGREEMENT AND RELEASE to any current or

---

1. At the time plaintiff filed his case, the minimum amount in controversy requirement was $50.000.

former employee of CITY, from the date of this AGREEMENT.

On April 14, 1995, the City made an initial payment of $10,847.57 under the Agreement. That check was a public record and a third party, upon proper request, could have obtained the information contained in the check.

After plaintiff resigned, he saw another city employee, Larry Wilson, at the grocery store. Wilson was aware of plaintiff's dispute with the City and was interested in the amount of sick leave the City had allowed plaintiff when he resigned. Wilson asked plaintiff if he had received a check from the City. Plaintiff answered that he had and that a copy of the check was in his car. Wilson retrieved the check and copied it. Plaintiff knew that Wilson had seen the check and intended for him to do so.

The City contends that plaintiff breached the Agreement when he disclosed the amount of the check to Wilson, and when it learned of the alleged breach, it stopped making payments under the Agreement. Plaintiff contends that he did not disclose anything about the existence of the Agreement or its terms. He states that the check was in the same format as any regular payroll check and that he did not tell Wilson that the City had issued the check pursuant to the Agreement. Plaintiff sues the City to recover the remaining payments due under the Agreement. Defendant counter-claims, asserting that it is entitled to recover the first payment because plaintiff breached the confidentiality clause of the Agreement.

Plaintiff also claims that defendant converted the proceeds of his pension account (the "ICMA account"). The account had an approximate value of $17,831 at the time of plaintiff's resignation. On February 8, 1995, the Franklin County District Court entered a divorce decree which directed plaintiff to pay his former wife $15,511.50, and if he did not do so within a specified period, ordered that the ICMA account be set aside to her. Plaintiff failed to make the necessary payments, and on June 21, 1995, the Franklin County District Court entered an order which set aside the ICMA account to plaintiff's wife.

In its motion to dismiss or for summary judgment, defendant claims that the Court does not have subject matter jurisdiction because plaintiff has artificially inflated his damages to meet the amount in controversy requirement for diversity jurisdiction. Alternatively, defendant seeks a declaration that plaintiff breached the Agreement, that plaintiff is entitled to no further payments, and that plaintiff owes the City for the first payment.

Plaintiff claims total damages of $55,863.26. Defendant claims that plaintiff inflated his damages by including a penalty of $10,622.56 for failure to pay "wages" under K.S.A. § 44–315 and a conversion claim for $30,396.70. The City contends that amounts paid under the Agreement, though determined by the amount of six months' wages, are not "wages" under the statute and that the statutory penalty does not apply. The City also contends that plaintiff does not have standing with respect to the ICMA account because of the Franklin County District Court's set aside order, and insists that plaintiff's ex-wife is the only one who has standing to sue on that claim. If the Court finds that plaintiff claimed either of these amounts unreasonably, then plaintiff does not meet the $50,000 threshold for diversity jurisdiction.

## DISCUSSION

■ The Court evaluates the required jurisdictional amount under 28 U.S.C. § 1332(a) by reference to the allegations of the complaint that are made in good faith, and the sums demanded in the complaint control. When plaintiff alleges and invokes federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, and defendant seeks to divest the Court of jurisdiction, defendant must show "to a legal certainty" that the claim is really for less than the jurisdictional amount. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ If the legal impossibility of recovering $50,000 is so certain that it virtually negates plaintiff's good faith in asserting the claim, the Court must dismiss the action for

lack of jurisdiction. *See Wiggins v. North American Equit. Life Assur. Co.*, 644 F.2d 1014, 1017 (4th Cir.1981). In determining whether the jurisdictional requirement is met, the Court considers evidence of conditions as they existed on the date the complaint was filed. *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir.1983).

■ Generally speaking, the legal certainty test makes it very difficult for a defendant to secure dismissal on the ground that the amount in controversy requirement is not met. Only three situations clearly meet the legal certainty standard: (1) when the terms of a contract limit plaintiff's possible recovery; (2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and (3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction. 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702, at 49–50 (1985).

■ In this case, a specific rule of law limits the amount of damages which plaintiff may recover. K.S.A. § 44–315 provides that

> [w]henever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday upon which he or she would have been paid if still employed.... If an employer knowingly fails to pay an employee wages ..., such employer shall be liable therefor and shall be additionally liable for damages in the fixed amount of one percent (1%) of the unpaid wages for each day ... upon which such failure continues after the eighth day after the day upon which payment is required or in amount equal to the unpaid wages, whichever is smaller....

K.S.A. § 44–313(c) defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis...." K.A.R. 49–20–1(d) defines "or other basis" within the meaning of K.S.A. § 44–313(c) to include

> all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.

■ Plaintiff describes at great length the remedial nature of the Kansas Wage Protection Act and its purpose of protecting wage earners. Plaintiff also argues that statutes such as K.S.A. § 44–313 should be broadly construed to effectuate their remedial purposes. While these propositions regarding statutory construction are indisputably true, *see, e.g., Burriss v. Northern Assur. Co. of America*, 236 Kan. 326, 333, 691 P.2d 10 (1984), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 58 (1985); *Farm Credit Bank of Wichita v. Zerr*, 22 Kan. App.2d 247, 252, 915 P.2d 137 (Kan.App. 1996), they are also irrelevant to the issue before the Court. An even more fundamental tenet of statutory construction is that a statute which is clear on its face need not be construed at all—in cases of statutory interpretation, the Court "must begin with the language of the statute itself." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). [T]he language of the statute itself is controlling when it is sufficiently clear in context, *Blue Cross Ass'n v. Harris*, 664 F.2d 806, 809 (10th Cir.1981), citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976), and must prevail absent a conflict with the statute's legislative history. *Aaron v. Securities & Exchange Commission*, 446 U.S. 680, 699–700, 100 S.Ct. 1945, 1957–58, 64 L.Ed.2d 611 (1980). The Court finds that K.S.A. § 44–315 is sufficiently clear and that plaintiff has posed no conflict between the statute's plain meaning and its legislative history.

Even if the Court determined that plaintiff were entitled to additional payments under the Agreement, those payments could not be

"wages" under K.S.A. § 44–313. The parties have cited no cases which are directly on point, and the Court's own research has not revealed any specific authority whether amounts due under a severance agreement constitute wages for purposes of K.S.A. § 44–315. The Court believes that the Agreement itself, however, read in conjunction with the applicable statutes, provides the clear resolution to this dispute.

Paragraph 2 of the Agreement stated that the City would pay plaintiff compensation *equal to* his full salary for six months and continue his health insurance through such period. The Agreement did *not* say that the City would continue to pay plaintiff's salary for six months; rather, the consideration due plaintiff under the Agreement was *measured by* his former salary.

Moreover, the compensation due under the Agreement was consideration for plaintiff's resignation and release of claims, not for services rendered. Plaintiff performed no services in return for the payments due under the Agreement. K.S.A. § 44–313(c) defines "wages" as "compensation *for labor or services rendered*," and K.A.R. 49–20–1(d) similarly suggests that "wages" include "all agreed compensation *for services* " and "compensation *due as a result of services performed* under an employment contract" (emphasis added). The Kansas Wage Protection Act provides a mechanism for penalizing employers who withhold payment of *earned* wages; it does not enhance contractual remedies for those who enter into agreements with parties who happen to be their employers.

The cases which plaintiff cites do not persuade the Court otherwise. Citing *Commodore v. Armour & Co.*, 201 Kan. 412, 421, 441 P.2d 815 (1968), plaintiff argues that Kansas courts have held separation payments to be within the definition of "wages" for purposes of K.S.A. § 44–315. In that case, however, the separation pay was provided in a collective bargaining agreement which governed plaintiff's employment. In *Commodore*, the

Kansas Supreme Court acknowledged that the purpose of the collective bargaining agreement was to provide incentive for continuous employment by enhancing benefits, to discourage early resignation or discharge for cause, and to provide retirement security for employees in good standing. *Id.* at 417, 441 P.2d 815. The court observed that "[s]everance or separation pay is generally considered wages *when provided for by collective bargaining agreements* " and specifically held that *under the terms of the agreement at issue in that case*, separation pay constituted wages. *Id.* at 420–21, 441 P.2d 815 (emphasis added). Plaintiff also cites other cases which hold that vacation or holiday leave which an employee has accrued under an employment contract constitutes wages for purposes of K.S.A. § 44–315. *See, e.g., Sweet v. Stormont Vail Regional Med. Center*, 231 Kan. 604, 612, 647 P.2d 1274 (1982); *Erickson v. General Motors Corp.*, 177 Kan. 90, 98, 276 P.2d 376 (1954); *Lindstrom v. St. Francis Hosp. & Med. Center, Inc.*, 6 Kan.App.2d 948, 952–53, 636 P.2d 231 (1981). These cases are clearly inapposite; plaintiff did not earn or accrue the City's payments under any employment or collective bargaining agreement which comprised the terms of his employment compensation. Because the amounts which plaintiff seeks do not constitute remuneration for any services that he rendered to defendant in the course of his employment, such amounts cannot be characterized as "wages" under the Kansas Wage Protection Act, the case law, or any reasonable interpretation of the Agreement at issue in this case. As a consequence, plaintiff cannot recover a penalty for nonpayment of wages under K.S.A. § 44–315, and defendant has shown to a legal certainty that plaintiff's claims are for less than the jurisdictional amount required under 28 U.S.C. § 1332.[2]

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment* (Doc. # 39) filed June 2, 1997, be and hereby is sustained, and that plaintiff's complaint be

---

**2.** Because the Court finds the issue of the wage penalty dispositive to defendant's motion, the Court need not discuss defendant's jurisdictional argument regarding the ICMA account or defendant's contention that it is entitled to summary judgment on the merits because plaintiff breached the confidentiality agreement.

dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that defendant's counterclaim be and hereby is dismissed without prejudice.