(636 P.2d 231)

No. 52,891

MARY A. LINDSTROM, CANDACE J. MEADE, and HARVEY L. LUDWICK, Secretary of Human Resources, Assignee, *Appellees,* v. ST. FRANCIS HOSPITAL & MEDICAL CENTER, INC., *Appellant.*

No. 53,398

ETHEL I. ENGELKE and HARVEY L. LUDWICK, Secretary of Human Resources, Assignee, *Appellants,* v. ST. FRANCIS HOSPITAL & MEDICAL CENTER, INC., *Appellee.*

Petition for review denied January 15, 1982.

Opinion filed November 25, 1981.

*K. Gary Sebelius,* of Eidson, Lewis, Porter & Haynes, of Topeka, for the appellant/appellee St. Francis Hospital & Medical Center, Inc.

*Reid Stacey,* assistant attorney general, and *Robert T. Stephan,* attorney general, for the appellees Mary A. Lindstrom, Candace J. Meade and Harvey L. Ludwick, and for the appellants Ethel I. Engelke and Harvey L. Ludwick.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

SWINEHART, J.: This is a consolidated appeal of cases numbered 52,891 and 53,398. No. 52,891 is an appeal from the judgment of the District Court of Shawnee County (Judge Carpenter) which affirmed the judgment made by the hearing officer appointed by the Secretary of Human Resources in favor of claimants Mary A. Lindstrom and Candace J. Meade against St. Francis Hospital & Medical Center, Inc. No. 53,398 is an appeal from the judgment of the District Court of Shawnee County (Judge Allen) which reversed the judgment made by the hearing officer appointed by

the Secretary of Human Resources, finding in favor of respondent St. Francis Hospital & Medical Center, Inc., and against claimant Ethel I. Engelke. The issues in both appeals are identical. Consequently, the cases were consolidated for purposes of appeal.

Claimant Lindstrom was employed as a PBX operator by respondent St. Francis Hospital from November 9, 1977, until May 2, 1979, when she resigned without giving two weeks' notice. She was employed pursuant to an employer-employee agreement and was receiving $3.59 per hour at the time of her resignation.

Claimant Meade was employed as a nurse's aide by respondent St. Francis Hospital from February 20, 1978, until April 2, 1979, when she was terminated for cause. She was employed pursuant to an employer-employee agreement and was receiving $4.02 per hour at the time of her termination.

Claimant Engelke was employed as a registered nurse by respondent St. Francis Hospital from February, 1974, until August, 1979, when she resigned without giving two weeks' notice. She was also employed pursuant to an employer-employee agreement and was receiving $7.68 per hour at the time of her resignation.

As a part of the employment agreement with claimants, the Hospital instituted a "Paid Days Off" (PDO) plan whereby employees accumulated leave hours based on hours worked. Primarily, these leave hours could be used for illness, vacation or holidays. Pursuant to this plan, if an employee resigned in good standing after one year of continuous service, having provided two weeks' advance notice, the employee would be paid for the unused PDO leave hours which had accrued. If an employee did not work for the required period of time or resigned without giving two weeks' notice or was discharged for due cause, the employee would not receive compensation for the unused accrued leave hours.

At the time she resigned, Lindstrom had accrued 90.75 hours of PDO. She did not give two weeks' notice when she resigned, so the Hospital refused to pay her the $325.79 (less authorized deductions) for these accrued hours. When Meade was terminated upon the Hospital's finding of cause, she had accrued 122 hours of PDO. Since she was terminated for cause the Hospital refused to pay her the $490.44 (less authorized deductions) for these accrued hours. When Engelke resigned, she had accrued

120.25 hours of PDO. Since she did not give two weeks' notice when she resigned, the Hospital refused to pay her the $932.32 (less authorized deductions) for these accrued hours.

Claimants Lindstrom, Meade and Engelke filed claims for unpaid wages with the Secretary of Human Resources in accordance with K.S.A. 44-313 *et seq.* Hearings were held and the hearing officer found in favor of the claimants. Respondent Hospital appealed the decisions to the District Court of Shawnee County. On December 12, 1980, Judge Carpenter affirmed the hearing officer in the Lindstrom and Meade appeal. On May 13, 1981, Judge Allen reversed the hearing officer in the Engelke appeal, finding that while the accumulated PDO were wages, they had not been earned and were therefore properly withheld. Respondent St. Francis Hospital and claimant Engelke appeal from their respective cases.

The Hospital first contends that K.A.R. 49-20-1F is invalid as an administrative regulation for going beyond that which the legislature has authorized. The district court in the Lindstrom and Meade appeal held that K.A.R. 49-20-1F is a valid regulation. We concur.

K.A.R. 49-20-1F states:

"F. 'Or other basis', within the meaning of K.S.A. 44-313(*c*), shall include all agreed compensation for services including, but not limited to, profit sharing and fringe benefits for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable."

K.S.A. 1980 Supp. 44-313(*c*) states:

"(*c*) 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission *or other* basis less authorized withholding and deductions." (Emphasis supplied.)

And K.S.A. 1980 Supp. 44-325 states:

"The secretary may adopt such rules and regulations as necessary for the purposes of administering and enforcing the provisions of this act."

Respondent Hospital contends that K.A.R. 49-20-1F is invalid since it goes beyond that which the legislature has authorized. It is fundamental that for an administrative regulation to be valid, it must be within the statutory authority granted to the administrative agency. The court, in *State, ex rel., v. Columbia Pictures Corporation,* 197 Kan. 448, Syl. ¶ 4, 417 P.2d 255 (1966), stated:

"The power to adopt rules and regulations is administrative in nature, not legislative, and to be valid, must be within the authority conferred. An administrative rule and regulation which goes beyond that which the legislature has authorized, or which violates the statute, or which alters, extends, limits, or attempts to breathe life into the source of its legislative power, is void."

Respondent contends that the definition of "or other basis" in K.A.R. 49-20-1F and the provision prohibiting conditions subsequent which result in forfeiture goes beyond that which has been authorized by the legislature. Respondent refers to legislative history in an attempt to show that the legislature rejected a definition of wages in the proposed House Bill No. 1429 that would have included vacation pay as wages:

"(c) 'Wages' means compensation, including hourly health and welfare, and pension fund contributions required pursuant to a health and welfare trust agreement, pension trust fund agreement, collective bargaining agreement or other agreement adopted for the benefit of an employee, for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of compensation. Vacation pay, when it is a matter of employment practice or policy, or both, shall be considered wages pursuant to the definition of wages." H.B. 1429 (1973).

Respondent argues that since this version was rejected, the necessary implication is that the legislature's intent was that vacation pay not be considered wages. A regulation which includes "fringe benefits" in the definition of wages, respondent argues, would therefore be unauthorized. Claimants counter this argument with the contention that the legislature is allowed to delete surplusage and excess rhetoric, and the only legislative intent which is shown by such a deletion is that the definition of wages in the statute was to be broad and all inclusive.

K.S.A. 1980 Supp. 44-325 directs the Secretary of Human Resources to adopt rules and regulations to administer and enforce the provisions of the wage act. K.A.R. 49-20-1F can be viewed as such a regulation. By clarifying the definition of wages by defining "or other basis" and by prohibiting forfeiture clauses, the regulation complements the statute by closing up some apparent loopholes. An employer in Kansas cannot now evade its duty owed to employees by ascribing another name to its wage plan. The employer likewise cannot circumvent the provisions of K.S.A. 1980 Supp. 44-315 by including condition subsequent forfeiture clauses in employment contracts.

We hold that K.A.R. 49-20-1F is a valid regulation and does not go beyond that which the legislature has authorized.

Respondent next contends that the PDO which were accumulated by claimants under the Hospital's vacation and sick leave plan are not "wages" as defined in K.S.A. 1980 Supp. 44-313(c). In *Benjamin v. Manpower, Inc., of Wichita,* 3 Kan. App. 2d 657, Syl. ¶ 2, 600 P.2d 148 (1979), this court held that "[v]acation pay due pursuant to an employment contract constitutes 'wages' as defined by K.S.A. 1978 Supp. 44-313(c)." But more recently, in *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, Syl. ¶ 2, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981), this court held:

"When an employment contract provides for 'earned time' in the unique manner set forth in this opinion, and an employee has the option of using the time for its stated purpose during the term of employment or the option of being paid for a percentage of accrued time, the exact percentage to depend on the length of employment, the 'earned time' is not wages as defined by K.S.A. 1980 Supp. 44-313(c)."

The court in *Richardson* specifically held that it was not overruling *Benjamin,* stating:

"We remain satisfied with our decision in *Benjamin.* Wages and vacation time earned and due to an employee pursuant to an employment contract may not be forfeited. That rule, however, does not apply to the facts in this case." 6 Kan. App. 2d at 241.

Since the "earned time off" plan in *Richardson* is similar to the PDO plan in the present case, it is necessary to scrutinize the two plans to determine whether the general rule as stated in *Benjamin* applies or whether the special rule which was limited to the facts of *Richardson* should apply.

The court in *Richardson* found that the right to pay for the accumulated earned time was conditioned upon the employee's continued employment. 6 Kan. App. 2d at 241. By contract, the employee never had an expectation of receiving full compensation for the "earned time" accrued if the employee chose not to continue working. The only way to get 100% compensation was to retire. Therefore, by the terms of the employment contract, the "earned time" was not "wages" and the decision in *Richardson* is correct.

In the present case, however, we find that the terms of the employment contract are such that the PDO should be considered wages. Employees have an absolute right to full compensation for

their accrued PDO with the exception of a forfeiture clause which is part of the employment contract.

It is clear from the record that claimants had earned their vacation and sick leave time. Each paycheck stub listed how many PDO hours had been accumulated. The employment contract provisions are written in terms of earning these PDO hours. The forfeiture clause necessarily indicates that the hours have been earned, for how can one forfeit that to which one is not already entitled? The PDO plan clearly can be considered "fringe benefits for which the conditions required for . . . accrual or earning have been met by the employee." K.A.R. 49-20-1F. The district court was therefore correct in affirming the administrative findings that the PDO hours are "wages."

The final issue is whether K.A.R. 49-20-1F is violated by respondent's conditioning payment for accumulated PDO upon claimants providing two weeks' prior notice of intent to resign or being discharged for reasons other than due cause.

The district court in the Lindstrom and Meade case affirmed the administrative holding that clause 7 of the PDO plan is a condition subsequent and is therefore ineffective and unenforceable pursuant to K.A.R. 49-20-1F. Clause 7 states:

"7. If an employee resigns in good standing after one year of continuous service, having provided written advance notice as required in the Employment Policies (2 weeks for employees, 4 weeks for Department Directors), they will be paid for unused Paid Days Off. If they do not work for the required notice period before termination or have been discharged for due cause all accrual annual leave will be forfeited."

In his memorandum accompanying the findings of fact, conclusions of law and order, the chief hearing officer in the Lindstrom and Meade case stated:

"It is further found that the two (2) week notice requirement is a condition subsequent resulting in forfeiture of an earned wage. The fallacy of any argument that it is otherwise, is that a person could schedule their paid days off, take them and receive their wages, and quit. For whatever rationale for a notice requirement, the fact remains that forfeiture for failing to give it is a penalty, and is subsequent to the earning. The notice requirement bears no relationship to the earning of paid days off; they are accrued and earned as the employment relationship continues; they terminate upon the finding of the employment relationship.

"The forfeiture of accrued days off upon a finding of cause to terminate speaks for itself - it is a forfeiture, and therefore, no more than a penalty. The earning has occurred, it has vested; and the wage is due. Being fired for cause is precedent to nothing; it is a subsequent forfeiture."

Respondent contends that the language in the employment

contract constitutes a condition precedent rather than a condition subsequent. A condition precedent is defined as "one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." Black's Law Dictionary 366 (4th ed. rev. 1968). A condition subsequent is defined as "[a] condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition." Black's Law Dictionary 366 (4th ed. rev. 1968).

We find that the language in clause 7 of the PDO plan is an unambiguous condition subsequent. Upon the stated condition the right to receive payment for accrued PDO is forfeited.

While we recognize the parties have wide discretion in fixing the terms of employment contracts, a contract which is contrary to public policy and law should not be honored or enforced by the courts. The PDO provision found in the employment contract in this case constitutes wages as defined in K.S.A. 1980 Supp. 44-313(c). The forfeiture clause contained in the employment agreement is a condition subsequent and is therefore rendered ineffective and unenforceable by K.A.R. 49-20-1F.

The district court was correct in affirming the administrative decision in the Lindstrom and Meade case, and likewise its decision is affirmed. Following the same analysis, the decision of the district court in the Engelke case is reversed.

McLAUGHLIN, J., dissenting.