No. 53,035

THERESA D. SWEET and HARVEY L. LUDWICK, Secretary of Human Resources, Assignee, *Appellants,* v. STORMONT VAIL REGIONAL MEDICAL CENTER, *Appellee.*

(647 P.2d 1274)

Opinion filed July 16, 1982.

*Reid Stacey,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellants.

*Charles R. Hay,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, argued the cause and *Arthur E. Palmer,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Stormont Vail Regional Medical Center (Stormont Vail), a Topeka general hospital, petitioned this court for review of an unpublished decision of the Court of Appeals in a case involving the claim of a former employee to compensation for vacation time which remained unused at the time of the termination of the employer-employee relationship (*Sweet v. Stormont Vail Regional Medical Center,* No. 53,035 filed March 11, 1982). We granted review.

Theresa D. Sweet, the original claimant in this action, was employed by Stormont Vail as a food service worker for the period from November 4, 1975, to March 15, 1979. At the time of her original employment Ms. Sweet was provided with a copy of Stormont Vail's employee handbook which set forth the general terms and conditions of employment. No one seriously questions the applicability of the employee handbook to Ms. Sweet's employment. In fact, both parties rely upon the handbook to support their positions and the provisions of the handbook may clearly be considered a part of the employment contract between Ms. Sweet and Stormont Vail. On March 15, 1979, Ms. Sweet terminated her employment with Stormont Vail without giving any prior notice that she intended to do so. Ms. Sweet was paid for her work to the date of termination but Stormont Vail, relying upon certain notice provisions in the employee handbook, refused to pay for vacation time which Ms. Sweet contends constitutes earned wages. She, therefore, filed a claim with the Secretary of Human Resources pursuant to K.S.A. 44-313 *et seq.* and, following an administrative hearing, the examiner found that the claimant had accrued certain vacation time and was entitled to payment therefor as wages upon the termination of her employment. The amount involved is $148.59. Stormont Vail appealed the examiner's decision to the district court which reversed the examiner and found that due to the notice provisions required by the contract of employment on termination, Ms. Sweet had failed to earn the amount allegedly due for her accrued vacation time. At the time of filing the original claim it was assigned, pursuant to K.S.A. 44-324, to the Secretary of Human Resources. The Secretary appealed the decision of the district court and the Court of Appeals reversed the decision of the district court thereby reinstating the examiner's award.

The resolution of the issues before us requires an examination of the applicable statutes and regulations, the employment agreement, and the prior decisions of the Kansas appellate courts.

K.S.A. 44-313(*c*) provides:

" 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."

K.S.A. 44-315(*a*) provides in pertinent part:

"Whenever an employer discharges an employee or whenever an employee quits or resigns, *the employer shall pay the employee's earned wages* not later than the next regular payday upon which he or she would have been paid if still employed . . . ." (Emphasis added.)

In regulations adopted by the Department of Human Resources "or other basis" is defined as:

" 'Or other basis', within the meaning of K.S.A. 44-313(c), shall include all agreed compensation for services including, but not limited to, profit sharing and fringe benefits for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable." K.A.R. 49-20-1F.

The Stormont Vail employees' handbook clearly sets forth the vacation policy of the employer and the requirements for receiving such vacation. It provides that employees who have worked from one to three years are entitled to two weeks' annual vacation which must be scheduled by the employee with his or her department to accommodate the work requirements of the department as well as the employee's preferences. The handbook further provides:

"Employees resigning from the hospital are expected to give their supervisor 2 weeks' written notice . . . . Any unused accumulated vacation that does not exceed 1-½ times an employee's annual vacation benefit will be paid to an employee who resigns *and gives the proper notice.*" (Emphasis added.)

Thus we are faced with a twofold question: (1) is accrued vacation time a fringe benefit and therefore wages as defined in K.A.R. 49-20-1F, and (2) if so, did Ms. Sweet's accrued vacation time constitute "earned wages" as contemplated by K.S.A. 44-315(*a*) and the parties' employment agreement? We think the second portion of the question must be answered in the negative.

The trial court found, based upon *Benjamin v. Manpower, Inc.*

*of Wichita,* 3 Kan. App. 2d 657, 600 P.2d 148 (1979), that accrued vacation time was included in the term "compensation for labor or services rendered," (K.S.A. 44-313[c]), but that it had not been "earned" (K.S.A. 44-315[a]) in this case. The Court of Appeals agreed that the vacation time constituted wages but disagreed that such wages had not been earned. The Court of Appeals, as had the examiner, further found that the requirement for two weeks' notice of intention to quit was a condition subsequent resulting in a forfeiture and therefore unenforceable under K.A.R. 49-20-1F.

In *Benjamin* the issue before the court was whether the refusal of Manpower, Inc. to pay Benjamin for two weeks' vacation upon his termination of employment constituted a willful violation entitling the employee to recover statutory penalties under K.S.A. 44-315(b). The trial court had held that Benjamin's accrued vacation constituted wages and that finding was not appealed. However, in discussing the nature of vacation pay the court stated:

"The Supreme Court decided in *Erickson v. General Motors Corporation,* 177 Kan. 90, 276 P.2d 376 (1954), that holiday pay was 'wages' and, in discussing holiday pay, stated at 98-99:

'It was a condition of his employment, and he had to work to get it, and he got it as part of his compensation. If that be not true, then the employee received something to which he was not strictly entitled, a thing ordinarily called a bonus, and if it was a bonus, it was still wages under the statutory definition of wages.'

Although the statute under consideration in *Erickson* specifically listed a 'bonus' as wages, we do not deem it of significance in this case as we are of the opinion that vacation pay due pursuant to an employment contract constitutes 'wages' as defined by K.S.A. 1978 Supp. 44-313(c); and if an employer willfully refuses to pay the same after demand is made therefor, that employer is subject to the statutory penalty." p. 659,

and

"In the absence of a valid contract provision authorizing forfeiture, vacation pay cannot be forfeited once the worker has earned the same. In this case there was no valid dispute over the contract provision for a paid vacation; the contract term had passed without the employer complaining to the worker about the quantity or quality of his work. The trial court found the worker was entitled to a paid vacation as of March 12, 1977. The employer thereafter had no legal right to declare the vacation wages forfeited or to refuse to pay the same. The employee requested that he be paid, as he had a right to do under his contract of employment, and his employer refused to pay." p. 661.

Two other recent cases in the Court of Appeals involving

hospitals have considered the status of vacation pay and reached opposite results. *Lindstrom v. St. Francis Hosp. & Med. Center, Inc.,* 6 Kan. App. 2d 948, 636 P.2d 231 (1981), *rev. denied* Jan. 15, 1982, and *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 627 P.2d 1143 (1981).

In *Richardson* a panel of the Court of Appeals concluded that an employment contract between a hospital and an employee did not contain an illegal forfeiture of wages due at the time of termination. The employment contract lumped paid absences for sick leave, holidays and vacation all together under the term "earned time." A full time employee accrued such "earned time" at the rate of 192 hours per year but the contract prohibited a total accumulation in excess of 480 hours. Upon retirement, the employee was entitled to payment in full for 100% of accrued earned time. However, if an employee terminated employment, payment for unused earned time was limited to a percentage dependent upon the years of service. For example, an employee that worked for less than five years was entitled to payment for only 50% of accrued time. Anita Richardson was employed as a nurse for the St. Mary Hospital in Manhattan, Kansas. In May of 1977, she made arrangements to use her earned time for maternity leave. During that authorized leave of absence, Mrs. Richardson took employment elsewhere. When she notified the St. Mary personnel department of her resignation, it immediately ended her authorized use of earned time and paid her for the appropriate percentage of unused accrued earned time based upon her years of employment. The Court of Appeals approved the hospital policy saying that the only way an employee could ever expect full compensation for accumulated earned time was by retirement rather than voluntary or involuntary termination. The court said:

"Parties have wide discretion in fixing the terms of employment contracts, and when the employment contract is not contrary to law it should be honored and enforced by the courts. As we view the employment contract here, we are of the opinion that the trial judge correctly determined that the earned time was not wages under the employment contract and that the right to pay was conditioned upon the employee's continued employment. The trial judge determined that the condition of employment is a condition precedent, not a condition subsequent. While the language used in the employment contract borders on being a condition subsequent, we are convinced that the right to use the accumulated earned time was absolute during the employment, and the right to payment for accrued time not used during the term of employment for which the employee elects to be paid when employment is terminated is governed by the employment contract and is not in violation of existing statutes and regulations." pp. 241-42.

The court concluded that the contract provisions limiting the payment for earned time on termination, as opposed to retirement, was valid and enforceable and did not result in an illegal forfeiture of wages due upon termination.

In *Lindstrom*, with one judge dissenting, the court found that "Paid Days Off" (PDO) accumulated under an employment contract were "wages" within the meaning of the statutes and regulations and that the requirement that an employee give two weeks' notice of termination before entitlement to pay for unused PDO time was an invalid condition subsequent. Because failure to give the notice of termination resulted in forfeiture of the benefit, the court would not approve the employer's policy.

As part of the employment agreement, St. Francis Hospital instituted the PDO plan whereby employees accumulated leave hours based on hours worked. The leave hours could be used for illness, vacation or holidays. Each employee's paycheck stub listed how many total PDO hours that employee had accumulated. The court found that the employment contract provisions governing PDOs was written in terms of "earning" those PDO hours. Pursuant to the plan, if an employee resigned in good standing after one year of continuous service, having given two weeks' advance notice, the employee would be paid for the unused PDO leave hours which had accrued. If an employee did not work for the required period of time or resigned without giving two weeks' notice or was discharged for due cause, then the employee would not receive compensation for the accrued PDO leave hours. The court held, under K.A.R. 49-20-1F, the hospital could not condition payment for accumulated PDO hours on the requirement of two weeks' notice of intent to resign.

The court in *Lindstrom* addressed the *Richardson* decision as follows:

"Since the 'earned time off' plan in *Richardson* is similar to the PDO plan in the present case, it is necessary to scrutinize the two plans to determine whether the general rule as stated in *Benjamin* applies or whether the special rule which was limited to the facts of *Richardson* should apply.

"The court in *Richardson* found that the right to pay for the accumulated earned time was conditioned upon the employee's continued employment. 6 Kan. App. 2d at 241. By contract, the employee never had an expectation of receiving full compensation for the 'earned time' accrued if the employee chose not to continue working. The only way to get 100% compensation was to retire. Therefore, by the

terms of the employment contract, the 'earned time' was not 'wages' and the decision in *Richardson* is correct.

"In the present case, however, we find that the terms of the employment contract are such that the PDO should be considered wages. Employees have an absolute right to full compensation for their accrued PDO with the exception of a forfeiture clause which is part of the employment contract." 6 Kan. App. 2d at 952-53.

The attempt to distinguish *Lindstrom* from *Richardson* is not persuasive. In the instant case, the Court of Appeals was of the opinion that the case was controlled by its prior decision in *Lindstrom,* and certainly the employment contract provisions are nearly identical. The court failed to make any mention of the *Richardson* holding in its determination of the present case. What the Court of Appeals failed to recognize in *Lindstrom* was that the fringe benefit of the right to PDO time could be obtained by two separate and distinct methods. The employee could continue to be employed and utilize the appropriate leaves of absence *during* employment or elect to terminate employment and obtain the separate benefit of receiving payment for unused PDO by giving two weeks' advance notice of the intent to terminate. Both *Richardson* and *Lindstrom* are distinguishable from *Benjamin* wherein once the leave time had accrued the employee had the option to enjoy the leave time as paid time off or in lieu thereof to receive additional payment for the earned time. No such absolute right to payment or time off existed in either *Richardson* or *Lindstrom.*

Our research has revealed nothing in Kansas law which requires an employer to convert vacation time to a lump sum payment absent agreement in the employment contract. Likewise, there appears to be nothing prohibiting the employer from conditioning any such lump sum payment on the giving of notice, or length of service or any other term which is not unconscionable. Both the hearing examiner and the Court of Appeals were of the opinion that the requirement of the employment contract calling for two weeks' notice of an intent to terminate in order to be eligible for payment for vacation time was a condition subsequent resulting in a forfeiture. We disagree.

In *Wallerius v. Hare,* 194 Kan. 408, 399 P.2d 543 (1965), this court said:

"A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract. It is one without

the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect." p. 412.

In the instant case the right to receive payment for vacation time upon voluntary termination was subject to a condition precedent; that is, the requirement of giving two weeks' notice. In determining the rights which accrue under an employment contract, the entitlement thereto or eligibility therefor, the contract controls so long as it is not unreasonable or illegal. There is no inherent right to a vacation or to payment for unused vacation time and the rights thereto, if any, must be found in the employment contract. See *Wheeler v. Mission Elec. & Plumb.*, 267 Or. 209, 515 P.2d 1323 (1973); *Walters v. Center Electric, Inc.*, 8 Wash. App. 322, 506 P.2d 883 (1973); Annot., 91 A.L.R.2d 1078. When, as in the instant case, the employee is made aware of company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms. *Suastez v. Plastic Dress-Up Co.*, 125 Cal. App. 3d 546, 178 Cal. Rptr. 11 (1981). At the hearing of this case, Ms. Sweet acknowledged having received the employee handbook which outlined the conditions of her employment contract and her rights under that contract. Since the notice requirement here is consistent with the hospital's need to be adequately staffed for the health and safety of its patients, the requirement of notice of intent to terminate is reasonable.

In *Commodore v. Armour & Co.*, 201 Kan. 412, 441 P.2d 815 (1968), the court was faced with a determination of whether separation pay contemplated by the employment agreement constituted wages. Although the case involved the effect in a federal bankruptcy action of the attempted assignment or pledge of separation pay, due upon termination of employment under certain conditions, the court recognized that absent anything to the contrary the terms of the employment contract control. The court stated:

"In our opinion separation pay, under the terms of the [employment] agreement before us, constitutes wages. Though correlated with his past employment, plaintiff could acquire no right thereto until his employment was terminated under conditions in conformance with the other requirements of the agreement. Plaintiff's right to separation pay, when he signed the note and power of attorney,

was at best contingent and never due and payable until termination of his employment and then only if termination be under such conditions that it became payable according to the terms of the agreement. (*Talberth v. Guy Gannett Publishing Co.*, [1953] 149 Me. 286, 100 A.2d 726, 40 A.L.R.2d 1036.)

"Under the terms of the agreement in question, plaintiff's continuing, in a satisfactory manner, his services in Armour's employment was an important part of the consideration for separation pay. He was paid weekly wages for his ordinary services. Separation pay constituted additional wages for continuing in employment until termination under conditions in compliance with the requirements of the agreement. It was not collectible nor was it fully earned until plaintiff met the required conditions, which occurred after adjudication. Entitlement to separation pay required substantial services by way of continued employment and termination thereof under the required conditions on the part of plaintiff subsequent to his adjudication in bankruptcy." p. 421.

In the case now before the court the learned trial judge, in his memorandum decision, stated:

" 'Vacation pay' is not defined in the agreement, but this court, in light of the common understanding of the meaning of that term and its general usage, views 'vacation pay' as meaning time off with pay, unless otherwise specifically defined.

"It is apparent to this court that by the Claimant's agreement Claimant only became entitled to vacation pay, hence 'earned' it, in one of two ways: scheduling time off with pay and continuing her employment, or giving Respondent two weeks prior notice of her intent to resign. The nature of Respondent's service to the public requires a stable work force and requiring notice or continued employment for entitlement to vacation pay was Respondent's means of maintaining that work force. The notice requirement for 'earning' unused accumulated vacation pay was consciously drafted for this purpose. Claimant's failure to comply with either of the requirements of her agreement with Respondent prevented her from earning vacation pay. The wages were neither earned nor payable pursuant to K.S.A. 1979 Supp. 44-315."

We agree with the trial court's analysis. Assuming that K.A.R. 49-20-1F is a valid regulation, a determination we are not required to make in this opinion, and assuming that vacation time or vacation pay is a "fringe benefit" within the terms of the regulation, the claimant has failed to comply with a valid provision or condition precedent of her employment contract necessary to receive such fringe benefit. In order to be entitled to payment for accrued vacation time upon termination of employment, the claimant was required to give Stormont Vail two weeks' notice of her intent to quit. Failure to do so negates any determination that such accrued vacation time constitutes "earned wages" as required by K.S.A. 44-315(a). To the extent that the opinion of the Court of Appeals in *Richardson* and our decision

herein are inconsistent with the holdings in *Lindstrom,* that case is disapproved.

The opinion of the Court of Appeals is reversed and the judgment of the district court is affirmed.

HERD, J., dissenting.