**Rosemary DURKIN, Plaintiff,**

v.

**CIGNA PROPERTY & CASUALTY CORPORATION**

**and**

**Lynn Peoples, Defendants.**

**No. 96–2177–JWL.**

United States District Court, D. Kansas.

Sept. 3, 1996.

Andrew C. Marquardt, Marquardt & Associates, L.L.C., Fairway, KS, for Rosemary Durkin, plaintiff.

Gregory B. Tobin, Philadelphia, PA, Jack D. Rowe, and Christine M. McKee, Lathrop & Gage L.C., Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on defendants' motion to compel arbitration and stay proceedings under the Federal Arbitration Act (Doc. # 8). For the reasons set forth below, defendants' motion is granted.

### I. Facts

Plaintiff is an at-will employee of defendant Insurance Company of North America (ICNA).[1] Plaintiff works as a claims supervisor in Overland Park, Kansas, handling workers' compensation claims arising in Kansas and other states. After she was denied various promotions and eventually demoted, plaintiff brought the present action, by which she alleges gender discrimination, age discrimination, disabilities discrimination, creation of a hostile work environment, unlawful retaliation, equal pay violations, and intentional and negligent infliction of emotional distress. Plaintiff's claims arise under Title VII, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), the Equal Pay Act, the Kansas Act Against Discrimination (KAAD), the Kansas Age Discrimination in Employment Act (KADEA), and Kansas tort law.

Defendants' motion is based on a dispute resolution policy adopted by ICNA, copies of which were distributed at a meeting attended by plaintiff on December 20, 1994. The policy states:

> In the interest of fairly and quickly resolving employment-related disagreements and problems, CIGNA Property–Casualty Divi-

---

1. Plaintiff is employed by Insurance Company of North America. In her complaint, plaintiff iden- tified the defendant as CIGNA.

sion's policy is that mediation/arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by the internal dispute resolution process. Both the Division and the employee will be bound by any mutually agreeable resolution arrived [at] as a result of mediation or by any decision made by an arbitrator. Any agreed upon resolution or arbitrator's decision will be enforceable in court, but mediation/arbitration must be used before going to court.

This policy is part of the employment relationship between an employee and CIGNA Property–Casualty Division. It is not, however, a guarantee that employment will continue for any specified period of time or end only under certain conditions.

***Nothing contained in this policy limits in any way an employee's right to resign from employment with any CIGNA company at any time for any reason or any CIGNA company's right to terminate employment at any time for any reason.*** The policy applies specifically to claims arising under Title VII, the Equal Pay Act, the ADEA, the ADA, "and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment."

## II. Discussion

### A. Federal Arbitration Act

Defendants seek to enforce the arbitration policy under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (1994). Section 2 of the FAA states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2. Section 4 provides that a party aggrieved by another party's refusal to abide by an arbitration provision may petition a district court for an order compelling arbitration; if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it must issue the requested order. *Id.* § 4. Section 3 of the FAA requires that the court, upon application of a party, stay judicial proceedings if the issues are properly referable to arbitration. *Id.* § 3.

The purpose of the FAA is "to overcome courts' refusals to enforce agreements to arbitrate." *Allied–Bruce Terminix Cos. v. Dobson,* —— U.S. ——, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). The FAA was intended to place arbitration agreements on the same footing as other contracts. *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25, 103 S.Ct. at 941.

### B. "Transaction Involving Commerce"

For section 2 of the FAA to apply, the arbitration provision must be part of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Defendants contend that the arbitration policy is part of plaintiff's employment contract and that that contract satisfies the "commerce" requirement.

Section 1 defines "commerce" as "commerce among the several States." *Id.* § 1. The Supreme Court has interpreted the term broadly: "commerce" here is not restricted to things actually within the flow of interstate commerce, but rather section 2 applies to the full extent allowed by the Commerce

Clause. *Allied–Bruce,* —— U.S. at —— ——, 115 S.Ct. at 839–41; *accord Foster v. Turley,* 808 F.2d 38, 40 (10th Cir.1986).

Plaintiff's employment required that she handle claims arising in various states. Therefore, given the Supreme Court's broad interpretation of the term, the court concludes that plaintiff's employment involved "commerce" as required by section 2.

### C. Section 1 Exclusion

■ Plaintiff suggests that the exclusion in section 1 of the FAA renders section 2 inapplicable here. The exclusion provides:

> [N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.

■ The Supreme Court has not addressed whether this exclusion encompasses *all* employment contracts.[2] In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), which involved an employment discrimination claim, the Court expressly declined to define the scope of the exclusion, stating that the arbitration provision at issue in that case was contained not in an employment contract, but in the employee's application for registration with a stock exchange. *Id.* at 25 n. 2, 111 S.Ct. at 1651 n. 2. The Court did conclude that precedent did not preclude arbitration of employment discrimination claims. *Id.* at 33–35, 111 S.Ct. at 1656–57.

The prevailing trend among courts is to hold that the exclusion does *not* apply to all employment contracts. *See generally Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 596–602 (6th Cir.1995) (surveying decisions on the issue). In the seminal case, the Third Circuit held that the exclusion applied only to workers actually engaged in the movement of interstate commerce. *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437,* 207 F.2d 450, 452 (3d Cir.1953). After reviewing the

legislative history of the exclusionary clause, the court concluded as follows:

> It thus appears that the draftsmen of the [FAA] were presented with the problem of exempting seamen's contracts. Seamen constitute a class of workers as to whom Congress had long provided machinery for arbitration. In exempting them the draftsmen excluded also railroad employees, another class of workers as to whom special procedure for the adjustment of disputes had previously been provided. Both these classes of workers were engaged directly in interstate or foreign commerce. To these the draftsmen of the [FAA] added "any other class of workers engaged in foreign or interstate commerce." We think that the intent of the latter language was, under the rule of ejusdem generis, to include only those other classes of workers who are likewise engaged directly in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it. The draftsmen had in mind the two groups of transportation workers as to which special arbitration legislation already existed and they rounded out the exclusionary clause by excluding all other similar classes of workers.

*Id.* at 452–53 (footnotes omitted).

*Tenney* has been followed by the First, Second, Sixth, and Seventh Circuits. *See Asplundh,* 71 F.3d at 600–02; *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL–CIO,* 739 F.2d 1159, 1162 (7th Cir. 1984) (reaffirming *Pietro Scalzitti Co. v. International Union of Operating Eng'rs., Local No. 150,* 351 F.2d 576, 579–80 (7th Cir. 1965)), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972) (reaffirming *Signal–Stat Corp. v. Local 475, United Elec., Radio & Mach. Workers of Am. (U.E.),* 235 F.2d 298, 302–03 (2d Cir.1956), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957));

---

2. The Kansas Uniform Arbitration Act specifically excludes employment contracts. Kan.Stat. Ann. § 5–401(c)(2) (Supp.1995). State law is preempted, however, to the extent that it conflicts with the FAA. *Volt Info. Sciences,* 489 U.S. at 477, 109 S.Ct. at 1255.

*Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971).

The Fourth Circuit rejected *Tenney* in *United Electrical, Radio & Machine Workers of America v. Miller Metal Products, Inc.,* 215 F.2d 221, 224 (4th Cir.1954). That court expressly limited its holding to collective bargaining agreements, however, *id.,* and the Fourth Circuit has never reaffirmed *United Electrical*'s rejection of *Tenney. See Kropfelder v. Snap–On Tools Corp.,* 859 F.Supp. 952, 958 (D.Md.1994) (district court in Fourth Circuit declining to follow *United Electrical* ). The Ninth Circuit once stated that the FAA "specifically excludes from coverage 'contracts of employment,'" but it did not support that statement with analysis or citation. *Herring v. Delta Air Lines, Inc.,* 894 F.2d 1020, 1023 (9th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1319, 108 L.Ed.2d 495 (1990).

In *Asplundh,* the Sixth Circuit ably supported its conclusion that "the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh,* 71 F.3d at 600–01. The court believed that such interpretation best comported "with the actual language of the statute and the apparent intent of the Congress which enacted it." *Id.* at 601. The court also noted the obvious difference in the wording of sections 1 and 2, concluding that Congress would have used the same language if it intended the exclusion to be as broad as the coverage granted in section 2. *Id.* Finally, the court concluded that a narrow construction of the exclusion was consistent with the FAA's purpose of favoring arbitration. *Id.*

The Tenth Circuit has not directly addressed this issue since 1951, when it stated that "[l]abor contracts are specifically excluded from the federal arbitration act." *Mercury Oil Ref. Co. v. Oil Workers Int'l Union, CIO,* 187 F.2d 980, 983 (10th Cir.1951) (citing 9 U.S.C. § 1). The court did not engage in any analysis of the exclusion, but merely cited cases from the Third, Fourth, and Sixth

Circuits. *See id.* As related above, however, the Third and Sixth Circuits now follow the rule set forth in *Tenney,* and there is some question whether the Fourth's Circuit's rejection of *Tenney* 40 years ago still constitutes good law.

*Mercury Oil* has never been cited by the Tenth Circuit with respect to this issue; in fact, since *Tenney* was decided in 1953, the Tenth Circuit has never directly addressed whether the exclusion applies to all employment contracts. The court has stated that "an employee can be required to arbitrate federal claims for employment discrimination if he or she has contracted to do so." *Armijo v. Prudential Ins. Co.,* 72 F.3d 793, 797 (10th Cir.1995) (citing *Gilmer*). *But see id.* at 802 (Jenkins, J., concurring) (stating that section 1 exclusion should apply to all employment contracts).

For the reasons set forth in *Tenney* and *Asplundh,* the court concludes that the exclusion in section 1 of the FAA does not encompass all employment claims. Moreover, given the age of *Mercury Oil,* the lack of analysis in that case, the prevailing trend among the circuits, and the disposition toward arbitration of federal employment discrimination claims displayed in *Gilmer* and *Armijo,* the court is persuaded that the Tenth Circuit would agree with its conclusion. *See McWilliams v. Logicon, Inc.,* 1996 WL 439291 (D.Kan. July 9, 1996) (following *Asplundh*).

Plaintiff here is not employed in the transportation industry and is not otherwise engaged in the actual movement of goods in the manner of a seaman or a railroad worker. Therefore, the exclusion in section 1 does not preclude application of the FAA in this case.

### D. Scope of the Arbitration Provision

Plaintiff's claims fall within the scope of ICNA's arbitration policy. The policy explicitly applies to claims under Title VII, the Equal Pay Act, the ADEA, and the ADA. In *Gilmer,* which involved an ADEA claim, the Supreme Court stated: "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer,* 500 U.S. at 26, 111

S.Ct. at 1652. As noted above, the Tenth Circuit has stated that federal employment discrimination claims are subject to arbitration. *Armijo,* 72 F.3d at 797; *see also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1487 (10th Cir.1994) (Title VII and age discrimination claims are subject to arbitration under the FAA). The policy's residual language clearly encompasses plaintiff's other employment-related claims.

### E. Absence of a Written Contract

■ Plaintiff asserts that the FAA applies only to arbitration provisions contained in *written* contracts. Plaintiff, an employee-at-will, was not a party to a written employment contract.

Plaintiff misreads the statute, however. The *contract* need not be written; rather, for arbitration of future disputes, section 2 requires "[a] written *provision*" in "a contract." 9 U.S.C. § 2 (emphasis added). Language from the Tenth Circuit supports such an interpretation:

> Decisions under the Federal Arbitration Act ... have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the arbitration provision be in writing.

*Medical Dev. Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir.1973) (citations omitted); *see also Kropfelder,* 859 F.Supp. at 955 (expired written employment contract, including arbitration clause, continued as part of an implied-in-fact employment contract the following year).

■ This court concludes that the requirement of a writing is intended to permit enforcement of arbitration agreements only in the face of competent evidence of the agreement's existence and scope. Similar evidence regarding the underlying contract is not necessary to the fulfillment of that purpose. Accordingly, the written policy at issue here satisfies the statute's literal requirement and the apparent attendant evidentiary concerns.

3. This court too has used such language in referring to an implied obligation within the employment relationship. *See Berry v. General Motors*

### F. Existence of an Employment Contract

■ Section 2 does at least require a contract, 9 U.S.C. § 2, and plaintiff asserts that no employment contract existed here. Plaintiff, however, misunderstands the law regarding implied-in-fact contractual obligations.

Plaintiff is an at-will employee and is not employed under a written employment contract. In such situation, the Kansas Supreme Court has recognized a wrongful termination cause of action based on an implied promise by the employer not to terminate the employee without good cause. *Morriss v. Coleman Co.,* 241 Kan. 501, 513–14, 738 P.2d 841, 849 (1987). Such a promise is often imprecisely termed, by courts as well as others,[3] an implied contract not to terminate, which leads to the mistaken inference that a contractual relationship does not exist in the absence of that promise.

■ In fact, an at-will employee *does* work under an employment contract, by which, at its most basic level, the employee promises to do a certain job and the employer promises payment therefor; the failure to fulfill either promise constitutes a breach of contract. The issue becomes whether that contract contains a certain provision—governing termination, for example, or, in this case, arbitration. As the Seventh Circuit explained:

> Employment at will is not a state of nature but a continuing contractual relation. Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract. All that is missing is a provision that gives the contract a fixed term or that entitles one or both parties to a specified amount of notice before the other party can cancel the contract without liability.

*McKnight v. General Motors Corp.,* 908 F.2d 104, 109 (7th Cir.1990) (citations omitted),

*Corp.,* 838 F.Supp. 1479, 1491 (D.Kan.1993), *aff'd,* 56 F.3d 1233 (10th Cir.1995).

*cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

The Kansas Supreme Court has stated that "[t]he existence of an employer-employee relationship ... ultimately depends upon the existence of express or implied contractual relations between the parties." *Robinson v. Muller,* 181 Kan. 150, 153, 309 P.2d 651, 654 (1957). Indeed, in *Morriss,* the Kansas Supreme Court, in first recognizing the wrongful termination cause of action, maintained the distinction between the implied provision and the underlying contract:

> One method commonly used by the courts is to interpret employment *contracts* more broadly and to recognize an implied *obligation* on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will.

*Morriss,* 241 Kan. at 509, 738 P.2d at 846 (emphasis added).

In the present case, plaintiff agreed to work for ICNA under certain conditions of employment, while ICNA agreed to compensate her for such work. Thus, plaintiff cannot be heard to argue that no employment contract existed here.

### G. Binding Effect of the Arbitration Policy

■ Finally, plaintiff asserts that the policy is not binding because her consent to be so bound has not been demonstrated. "Although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide." *Armijo,* 72 F.3d at 797. The parties' intentions "are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

■ The court concludes that the arbitration policy became a binding, enforceable provision of plaintiff's employment contract. The court recognizes the "distinct difference between a policy which a given employer might adopt and sincerely intend to follow, and normally does follow, and a binding contractual duty." *Berry v. General Motors Corp.,* 838 F.Supp. 1479, 1492 (D.Kan.1993), *aff'd,* 56 F.3d 1233 (10th Cir.1995). The language of the policy at issue here, however, makes clear that a contractual duty of arbitration or mediation was created. The policy specifically states that it "is part of the employment relationship." The policy further states that both the employer and the employee *"will* be bound" by the outcome of arbitration or mediation, and that the decision *"will* be enforceable in court." (Emphasis added.)

■ Moreover, the evidence establishes that plaintiff had actual notice of the policy. "When, as in the instant case, the employee is made aware of company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms." *Sweet v. Stormont Vail Reg. Medical Ctr.,* 231 Kan. 604, 611, 647 P.2d 1274, 1280 (1982).

Nor can plaintiff claim a failure for lack of mutuality. The policy language quoted above indicates that the employer was also bound to submit employment disputes to arbitration or mediation. *See Albert v. National Cash Register Co.,* 874 F.Supp. 1324, 1326 (S.D.Fla.1994) (mutuality of contract present where both parties were bound to arbitration provision); *cf. Hull v. Norcom, Inc.,* 750 F.2d 1547, 1549 (11th Cir.1985) (arbitration agreement void because not mutually binding).

■ The court also rejects plaintiff's argument that any contractual arbitration provision must fail for lack of consideration. Plaintiff's continued employment provided sufficient consideration here. In addition, "[t]he agreement of one party to a contract to arbitrate disputes is sufficient consideration to support the other party's agreement to do the same." *Lacheney v. ProfitKey Int'l,* 818 F.Supp. 922, 925 (E.D.Va.1993); *see also Hellenic Lines, Ltd. v. Louis Dreyfus Corp.,* 372 F.2d 753, 758 (2d Cir.1967) ("Hellenic's promise to arbitrate was sufficient consideration to support Dreyfus's promise to arbitrate.").

■ Finally, plaintiff contends that her employer's imposition of the arbitration

policy amounted to a contract of adhesion. "Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer*, 500 U.S. at 33, 111 S.Ct. at 1655. Plaintiff's employment contract, including the arbitration provision, was not so unfair or unreasonable as to offend public policy and so be void as an adhesion contract.

### H. Summary

The court is satisfied that ICNA's written arbitration policy became part of plaintiff's employment contract and is therefore enforceable under the FAA. Accordingly, the FAA requires that the court grant defendants' request for an order compelling arbitration and staying proceedings in this case.

**IT IS THEREFORE ORDERED THAT** defendants' motion to compel arbitration and stay judicial proceedings is granted. Counsel for the parties are directed to report to the court in writing no later than March 3, 1997, concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IS IT SO ORDERED.**